# COUNTY OF YORK.

### RUFUS M. LORD *versus* ISRAEL CHADBOURNE.

The common law will afford no aid to a party whose claims can be successfully enforced only by a violation of its principles, or in direct contravention of a statute; and this principle is equally applicable to actions sounding in *tort.*

It is upon this principle, that courts have held that no action can be maintained on a bond or contract executed on the Sabbath; for deceit in the exchange of horses on the Sabbath; for damages occasioned by a defective highway while traveling on the Sabbath, or for injury to a horse knowingly let to be used on the Sabbath, not from necessity or for charity; on a note given for goods purchased to be peddled out contrary to law; and for compensation for services in trade with an enemy in time of war.

In an action of trespass, to recover the value of certain liquors, which had been seized upon a warrant, and for which a writ of restitution had issued, the defendant offered to prove that at the time of the seizure, and for a considerable time previous, intoxicating liquors had been kept for sale by the plaintiff, and that he had been in the habit of selling them in violation of law; which evidence was excluded by the presiding Judge: — *Held,* that as the value of the liquors must depend upon their *status* at the time of seizure, the evidence offered was admissible to enable the jury to determine what that *status* was.

The Legislature has power to pass laws altering, modifying, or even taking away remedies for the recovery of debts, without incurring a violation of the provisions of the constitution, which forbid the passage of *ex post facto* laws.

A judicial tribunal cannot declare void a law passed by the Legislature and clearly within the general scope of its constitutional power, because the law is, in the opinion of the Court, contrary to the principles of natural justice.

The Act of 1851, c. 211, § 16, which provides that "no action of any kind shall be maintained in any Court in this State, either in whole or in part, for intoxicating or spirituous liquors," &c., nor "any action of any kind" "for the recovery or possession of intoxicating or spirituous liquors, or the value thereof," is to be limited in its application to liquors held in violation of law, and thereby liable to forfeiture.

The Act applies equally to actions of replevin, trespass, trover and assumpsit.

The rights of a plaintiff in an action of trespass are not enlarged by the fact that the defendant seized the property sued for under an illegal warrant, if, at the time of the seizure, the plaintiff held the property in disregard of law.

Judgments are conclusive upon the parties to them, in reference only to such matters as were directly in issue in the case.

When the proceedings are *in rem*, the decree of the Court is an adjudication upon the *status* of some particular subject, and is binding upon all parties.

On Report from *Nisi Prius*, Shepley, C. J., presiding.

This was an action of trespass on the case.

The plaintiff introduced in evidence, a warrant dated December 29, 1851, issued by Frederic Green, Esq., Judge of the Municipal Court of Saco, on complaint of Cotton Bradbury, Charles Hill, and Seth Scammon, for a search of the shop occupied by the said Rufus M. Lord, with the return thereon of M. D. Kimball, deputy sheriff. Also, a copy of a judgment of the Supreme Judicial Court, at the September term, 1852, in the case, *State of Maine* v. *Spirituous Liquors and Rufus M. Lord.* Also, a writ of restitution issued from said Court upon the judgment aforesaid, dated October 19, 1852, with the return thereon of Thomas P. Tufts, coroner.

The plaintiff then called Thomas M. Hayes, who testified that Chadbourne, the defendant, directed Kimball in the seizure of the property, and in all his proceedings, and to sign the return; that Chadbourne said he would take the control of the property and would be responsible for it, and return it, if so ordered, or pay for it.

On cross-examination, he testified; " I suppose Abraham Haley had the control of the liquors when they were taken; he attached them on a writ against Lord in favor of Mr. Keag. I don't know where Mr. Keag is; he was clerk of Mr. Lord. The store was on the corner of Free street and Maine street. I think Mr. Keag carried on business for himself; he said he had a note for $400 or $500, on which the suit was brought. My impression is, that Haley had attached the liquor in the part occupied by Lord, and that Haley had the key of the store."

The plaintiff then called Isaac Sands, who testified that he was present, about the first of November, 1852, when Lord made a demand on Chadbourne, for the spirit that was taken from him; and Chadbourne said "yes, I wish I had it for you, but I suppose it has been destroyed."

The plaintiff also introduced evidence as to the value of the liquors.

The defendant then offered evidence to prove that at the time of the seizure of the liquors, by Kimball, under the warrant, and for a considerable time previous, they were kept for sale by Lord, he not being licensed to sell; that during the time said liquors were pretended to be under attachment by Haley, as testified by Hayes, Lord had a key of the front door of the store where they were kept, and also a way of access to said store, by a back door, through the store occupied by Keag, and an apparatus for privately closing the same; that during that time Lord had conveyed several additional casks of liquors into said store, and had frequently opened and entered said store, when Haley was not present, and had been in the habit of selling said liquors in violation of law.

But the presiding Judge ruled, that this testimony was inadmissible, and excluded the same. Thereupon the cause was submitted to the jury for the purpose of settling the amount of damages, and a verdict was rendered for the plaintiff.

The parties agree, that the case shall be reported for the determination of the full Court, as to the correctness of the rulings aforesaid. And if the full Court shall be of opinion, that the rulings aforesaid, of the presiding Judge, were correct, then the verdict is to stand; if otherwise, then the verdict may be modified, or set aside, and such judgment rendered in the case as the Court shall determine.

*John H. Goodenow* and *Shepley & Hayes*, for plaintiff.

1. Mark D. Kimball, the deputy of Chadbourne, was ordered to restore the liquors. The coroner, Tufts, demanded them, Nov. 15, 1852, and they were not delivered.

It does not appear by the record that they were intended for sale.

It does not appear that they were illegally taken and held under that process.

They could not be condemned without an adjudication.

By art. 1, § 1, (Con.) all men have the right of acquiring, possessing and protecting property.

2. It was property valuable for the plaintiff's own use. 2. For exportation. 3. For sale under a license. Legislatures have power to make and establish all reasonable laws and regulations for the defence and benefit of the people of this State, not repugnant to the constitution of the State, nor to that of the United States.

3. This is not an action for the recovery or possession of intoxicating liquors, or the value thereof, but for damages for official *non-feasance.*

4. The statute, March 31, 1853, § 1, provides:—"And the liquors so seized, with the vessels in which they are contained, shall be declared forfeited, and such adjudication shall be a bar to any claim for the recovery of the same or the value thereof." If the owner is unknown, the liquors are to be advertised for two weeks before they are condemned and destroyed. If owned for a legal purpose, the Court shall order them restored. The common law would require the same to be done, analagous to taking property by replevin.

5. They were the plaintiff's property in fact. A refusal to deliver them was a conversion.

6. They were not a nuisance, if intended for sale. *Preston* v. *Drew,* 34 Maine, 558. Not so declared by the statute. Not within the common law definition. 4 Black. Com. 166.

They were not a nuisance, until condemned, if at all. They were not indictable as a common nuisance, but sufficiently punished, in a particular way, by statute.

Liquors are not in the same category with obscene prints and counterfeit money. Obscene prints and counterfeit money are immoral in and of themselves. It is a crime to make, issue, or retain possession of counterfeit money, knowing it to be counterfeit; or to keep for an instant immoral publications. The moral sense of the community, no less than the law itself, declares their outlawry at once. It cannot be right, or lawful, to make, issue, or retain them, even for an

instant, except for the purpose of bringing offenders to justice. But it is not so in regard to the liquors in question. They are a lawful article of commerce. They can be applied to valuable uses. They are entitled to protection, until some unlawful act, or intent, on the part of the owner, is proved. An unlawful intent cannot be inferred, without some act done.

There are hundreds of uses to which liquor may be lawfully applied. It may never be intended for drinking, or for sale, in any drinking house or tippling shop. The possession of such property, under proper regulations, is no evidence of an unlawful intent.

If used for cleansing houses, purifying vaults, or for conversion into burning fluid, its use would be perfectly lawful in this State. If used for any other purpose than for tippling, no wrong would be done thereby.

6. If a nuisance, it should be abated according to law. The peace and order of the State require that it should be by the proper officers of the law.

Irresponsible men might take the law into their own hands, and punish a man, and then try him afterwards.

7. No worse thing could happen to the law, or the cause of temperance, than to have a decision countenancing such violence.

*Eastman & Leland*, for defendant.

1. In this case, the defendant offered evidence that the liquors were kept for sale by Lord, and that he had been in the habit of selling them in violation of law. This testimony was excluded by the presiding Judge.

The defendant contends, that this testimony should have been received, and that it was wrongfully excluded. He should have been allowed to prove that Lord, the present plaintiff, was guilty of a violation of law in keeping the liquors; and in that case, he could not, according to the principles of the common law, nor by the provisions of the statute as restricted by the constitution, according to the decision of this Court, recover in this action.

The plaintiff should come into Court with clean hands. In

regard to contracts, no principle of law is better settled, than that the law will not lend its aid to enforce an illegal contract, or one founded on an illegal consideration. *In pari delicto, potior est conditio defendentis.*

In *Worcester* v. *Eaton*, 11 Mass. 368, (378,) PARKER, C. J., says:—"If one hold the obligation or promise of another, founded on illegal consideration, the party defendant may expose the nature of the transaction to the Court, and the law will say, 'our forms and rules are established to protect the innocent and to vindicate the injured, not to aid offenders in the execution of their unjust projects;' and you must not have the aid of law to rid you of an inconvenience which is a suitable punishment of your offence."

In *Holman* v. *Johnson*, Cowper, 341, Lord MANSFIELD says: "The principle of public policy is this: *Ex dolo malo non oritur actio.* No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa*, or a transgression of a positive law of this country, there, the Court says, he has no right to be assisted. It is upon this ground that the Court goes; not for the sake of the defendant; but because they will not lend their aid to such a plaintiff."

In *Morck* v. *Abel*, 3 Bos. & Pul. 35, Lord ALVANLEY says: "No man can come into a British court of justice to seek the assistance of the law, who founds his claim upon a contravention of the British laws."

In *Booth* v. *Hodgson*, 6 T. R. 405, where A. and B. became partners in insuring ships, contrary to the statute, but it was agreed that the policies should be underwritten in the name of A. only, several policies were effected, and the premiums received by B. as a broker: *held*, that A. could not recover any part of these premiums from B.

Lord KENYON, C. J., says:—"The plaintiffs say to the Court, 'suffer us to garble the case, to suppress such facts of the transaction as we please, and to impose that mutilated state of it on the Court, as the true and genuine transaction, and

then we can disclose such a case, as will enable our clients to recover in a court of law.' It is a maxim in our law, that a plaintiff must show that he stands on a fair ground, when he calls on a court of justice to administer relief to him."

So, a vender, selling goods to be smuggled, and knowingly packing them for that purpose, cannot recover payment for them, though the sale and delivery be complete in a foreign country. *Clugar* v. *Panaluna*, 4 T. R. 466; *Wamell* v. *Reed & al.*, 5 T. R. 599.

A promissory note, made on the Lord's day, given and received as the consideration for articles purchased on that day, is void. *Towle* v. *Larrabee*, 26 Maine, 464. So in New Hampshire. *Clough* v. *Davis*, 9 N. H., 500. So, in Massachusetts, an action cannot be maintained on a bond which is executed neither from necessity nor charity on the Lord's day. In that case, Shaw, C. J., says:—"The general principle, that an action will not lie on a contract made in contravention of a statute, or of a principle of the common law, is well established, and has been repeatedly recognized and enforced in the courts of this commonwealth." *Pattee* v. *Greeley*, 13 Met. 284, (286.)

In *Wheeler* v. *Russell*, 17 Mass. 258, (281,) Parker, C. J., says:—"No principle of law is better settled, than that no action will lie upon a contract made in violation of a statute, or of a principle of the common law."

In *Dixie* v. *Abbott*, 7 Cush. 610, it was decided that an action could not be maintained to recover the price of spirituous liquors sold to the defendant contrary to law.

In *Robinson* v. *Howard*, 7 Cush. 611, *n*, it was decided, that an action could not be maintained on a note given for goods, bought to be carried about and peddled contrary to the provisions of law.

A written contract for the sale of an apothecary's stock of goods, cannot be enforced at law, if a part of the stock consists of spirituous liquors. *Ladd* v. *Dillingham*, 34 Maine, 316.

2. In regard to torts, the same principle prevails, and, as we believe, is equally well settled.

It is on this principle, that a woman cannot maintain an action for seduction, she being *particeps criminis.*   *Paul* v. *Frazier,* 3 Mass. 71.

The fraudulent purchaser of the goods of a judgment debtor has no right to contest the regularity of the doings of an officer, who has seized them on an execution, against the debtor.   *Daggett* v. *Adams,* 1 Greenl. 198; *Smith* v. *Hobbs,* 10 Maine, 71.

A person guilty of maintenance, in purchasing a dormant title, can maintain no action against his grantor for fraud, in interfering to prevent his recovery.   In this case, PARKER, C. J., says, "No principle is more clear, or more reasonable than that a man cannot build up a right in a court of justice, upon an illegal or an immoral act of his own."   *Swett & al.* v. *Poor & al.,* 11 Mass. 549.

Money fraudulently won at gaming cannot be recovered back.   *Babcock* v. *Thompson,* 3 Pick. 446.

An action cannot be maintained for deceit practiced in the exchange of horses, on the Lord's day.   In this case, WILDE, J., says, "In all cases, it is a well established principle, that a court will not lend its aid to a party, who founds his action on an illegal transaction."   *Robeson* v. *French,* 12 Met. 24, (25.)

A person who travels on the Lord's day, neither from necessity nor charity, cannot maintain an action against a town for an injury received by him, while so traveling, by reason of a defect in a highway, which the town is by law obliged to keep in repair.   *Bosworth* v. *Inhabitants of Swanzey,* 10 Met. 363.

If the owner of a horse knowingly lets him on the Lord's day, to be driven to a particular place, but not for any purpose of necessity or charity, and the hirer injures the horse by immoderate driving, in consequence of which he afterwards dies, the owner cannot maintain an action against the hirer for such injury, although it is occasioned in going to a different place, and beyond the limits specified in the contract. *Gregg* v. *Wyman & al.* 4 Cush. 322.   In this case, FLETCHER, J., says, "The plaintiff acted unlawfully in letting the horse,

and he let him knowingly, for an unlawful purpose. No person can maintain an action founded on such an unlawful proceeding. The authorities on this point are numerous and conclusive. It is also a well settled principle of law, that if the plaintiff cannot make out his claim, without showing an illegal act on his own part, he cannot maintain his action. If the plaintiff's own illegal act forms one link in his chain of title, that is a defective link, which cannot hold the chain together, and the whole must fall. A party cannot be heard to allege his own unlawful act; and if such act be one of a series of facts, necessary to support the plaintiff's claim, then that claim must fail. The party who seeks redress in a court of justice, must come with clean hands; an action which requires for its support the aid of an illegal act, cannot be maintained."

3. But the Act, entitled " an Act for the suppression of drinking houses and tippling shops," of 1851, c. 211, § 16, contains the following provision; "and no action of any kind shall be maintained in any court in this State, either in whole or in part, for intoxicating or spirituous liquors sold in any other State or country whatever; nor shall any action of any kind be had or maintained in any court in this State for the recovery or possession of intoxicating or spirituous liquors, or the value thereof."

This provision of the statute was very fully examined and discussed in the very able opinion drawn by the Chief Justice, in the case *Preston* v. *Drew*, 33 Maine, 558. He there says, " The State, by its legislative enactments operating prospectively, may determine that articles, injurious to the public health or morals, shall not constitute property within its jurisdiction. It may come to the conclusion that spirituous liquors, when used as a beverage, are productive of a great variety of ills and evils to the people, both in their individual and their associate relations. * * * Such conclusions would be justified by the experience and history of man. If a Legislature should declare that no person should acquire any property in

them for such a purpose, there would be no occasion for complaint, that it had violated any provision of the constitution."

4. But it will be said, the Court has already adjudicated upon these questions, and ordered the liquors to be restored, and issued a writ of restitution. Such was the ground taken at the trial, and sustained by his honor the Chief Justice, who was pleased to say, as a reason for excluding the testimony offered, to prove that the liquors were kept for sale in violation of law, "I do not consider that as any justification of a sheriff for not obeying an order of the Court to return them."

In *Pierce* v. *Strickland*, 26 Maine, 277, (294,) WHITMAN, C. J., in delivering the opinion of the Court, says :— "Where a judgment is introduced collaterally, as a muniment of title, which was rendered *inter alios*, it is not conclusive upon the one not a party to it. It will be competent for him to show that it was unduly or irregularly obtained."

The same doctrine is supported in *Downes* v. *Fuller*, 2 Met. 135, and in other cases there cited.

In replevin, if the plaintiff fails to recover, the statute expressly authorizes the Court to enter judgment for a return, and to issue a writ of return and restitution. R. S., c. 130, § 11.

So in case of personal property libeled for forfeiture. R. S., c. 132, § 8.

So in regard to property stolen. R. S., c. 156, § 14.

If there be any other case in which the Court has exercised this power, it is not now within our recollection; if so, we presume the authority is conferred by express provision of some statute in each case. And here we apply the maxim. *Expressio unius est exclusio alterius.*

In *Commonwealth* v. *Lottery tickets*, 5 Cush. 369, where a search warrant was improperly issued for lottery tickets, and they were found and seized, it was decided that the Court had no authority to order them to be destroyed; but the Court did not order them to be restored, nor claim the power

to do so; nor intimate that an action could be maintained by the owner to recover them back. The Court says, "Courts have no authority to regulate the disposition of them besides that which is conferred by statute."

APPLETON, J.—It is well settled, that the common law will afford no aid to a party whose claims can be successfully enforced only by a violation of its principles, or in direct contravention of a statutory enactment. It has, accordingly, been held, that no action could be maintained upon a bond or contract executed upon the Sabbath. *Pattee* v. *Greeley*, 13 Met. 284; *Lyon* v. *Strong*, 6 Verm. 219. So, the price of spirituous liquors, sold contrary to law, cannot be recovered. *Dixie* v. *Abbott*, 7 Cush. 610; *Ladd* v. *Dillingham*, 34 Maine, 316. Nor is an action maintainable upon a note given for goods bought to be carried about and peddled, contrary to law. *Robinson* v. *Howard*, 7 Cush. 611. Trade with the enemy in time of war, is illegal, and one who knowingly aids another in such trade, cannot recover compensation therefor. *Beach* v. *Kezar*, 1 N. H. 184.

The same principle has been regarded as applicable to actions sounding in *tort*. No action on the case, for deceit in the exchange of horses, made on the Sabbath, can be maintained. *Robinson* v. *French*, 12 Met. 24. So, a person traveling on the Lord's day, neither from necessity nor charity, is not entitled to recover against a town for an injury received by him while so traveling, in consequence of a defective highway, which the town was by law obliged to keep in repair. *Bosworth* v. *Swanzey*, 10 Met. 363. If the owner of a horse knowingly lets him on the Lord's day, to be driven to a particular place, but not from any purpose of necessity or charity, and the hirer injures the horse by immoderate driving, an action cannot be maintained against him for such injury, although it is occasioned in going to a different place and beyond the limits specified in the contract. *Gregg* v. *Wyman*, 4 Cush. 322. "Courts of justice," remarks REDFIELD, J., in *Spaulding* v. *Preston*, 21 Vermont, 9, "will not sustain

actions in regard to contracts or property, which has for its object the violation of law. If a gang of counterfeiters had quarreled about the division of their stock or tools, a court of justice could hardly be expected to sit as a divider between them. If one had taken the whole in violation of the laws by which such associations subsist, a court of law could not interfere, because it is not presumed to be expert in such questions. And if it were, it is considered to be a scandal that such matters should be discussed or adjusted. Such property is, so to speak, *outlawed,* and is common plunder. One who sits himself deliberately at work to contravene the fundamental laws of civil government — that is, the security of life, liberty or property, forfeits his own right to protection in those respects wherein he was studying to infringe the rights of others." "So, too, if a member of the body politic, instead of putting his property to honest uses, converts it into an engine to injure the life, liberty, health, morals, peace or property of others, he thereby forfeits all right to the protection of his *bona fide* interest in such property before it was put to such use."

The general principle involved in the cases cited, and the almost innumerable decisions made in entire accordance therewith, is, that the law distinguishes between rights acquired in conformity with, and arising under its provisions, and claims originating in their clear and palpable violation; that it will not enforce claims made in contravention of its mandates, nor protect property held against, and being used for the deliberate purpose of disobeying its enactments. A different course would be suicidal. The law cannot lend its aid to the destruction of its own authority and to the disobedience of its own commands.

The defendant, on the trial at *Nisi Prius,* offered to prove, at the time of the seizure of the liquors in dispute, by Kimball, under the warrant referred to in the report of the case, and for a considerable time previous, that they were kept for sale by the plaintiff, he not being licensed to sell, &c., and that he had been in the habit of selling said liquors

habit of selling said liquors in violation of law, but the presiding Judge ruled that this testimony was inadmissible, and excluded the same.

However the common law may be on this subject, the statute of 1851, c. 211, § 16, in clear and distinct terms denies the general right to maintain any action, of which spirituous liquors may in any mode be regarded as the subject matter. It provides, that "no action of *any* kind shall be maintained in any court in this State, either in *whole* or in *part* for intoxcating or spirituous liquors sold in any other State or country whatever; nor shall *any action* of *any kind* be had or maintained in any court in the State for the *recovery* or possession of intoxicating or spirituous liquors, or the *value* thereof." The Legislature may pass laws altering or modifying or even taking away remedies for the recovery of debts, without incurring a violation of the provisions of the constitution, which forbid the passage of *ex post facto* laws. *Evans* v. *Montgomery,* 4 W. & S., 218.

"If the Legislature," says Rogers, J., in *Commonwealth* v. *M'Cluskey,* 2 Rawle, 514, "should pass a law in plain, unquestioned and explicit terms, within the general scope of their constitutional power, I know of no authority in this Court to pronounce such an Act void, merely because, in the opinion of the judicial tribunal, it was contrary to the principles of natural justice." The right to take away the remedy for the recovery of debts, and for the recovery of compensation in damages for *torts,* rests upon similar grounds. For a long time usury was a valid defence to a loan of money, made against the provisions of the statute on this subject. So the right to recover has been denied, because regulations as to the survey, or the inspection of articles sold, have been disregarded; though, in all such cases, the articles sold were none the less valuable and the seller was none the less, in equity, entitled to compensation for the thing sold. Much more, then, may the aid of the law be denied when the plaintiff seeks compensation for what was held in defiance of its mandates and with the intent to disregard its clearest prohibitions.

The language of the statute is most general.   But in *Preston* v. *Drew*, 33 Maine, 562, it was held, and, on the most satisfactory reasoning, and after a comparison of one part of the statute with another, that this generality of language should be limited and restrained to liquors held in violation of law, and which were liable to forfeiture.   " The general intent and declared purpose of the Act," remarks Shepley, C. J., " would in no degree be infringed, by regarding the general language to be so limited as to forbid the maintenance of any action for the recovery or possession of such liquors, or their value, which were liable to seizure and forfeiture, or intended for sale in violation of the provisions of the Act."   The correctness of the construction there given cannot be a matter of question.   Were it not so, the protection of the law would be withheld from liquors held in accordance with its express provisions.   The town could not enforce their rights to liquors taken from the possession of their agent, nor could the mechanic recover damages for the destruction of liquors purchased for mechanical purposes.

The language of the Act prohibits the maintenance " of any action of any kind."   It includes all modes of vindicating the possession, if withheld, or of enforcing compensation in damages, if destroyed, subject to the limitation just considered. It equally embraces replevin, trespass, or trover, as assumpsit.

It is not necessary to examine the constitutionality of the search and seizure clause ; for if trover or trespass cannot be maintained for the conversion or destruction of property held in violation of law, against the person thus converting or destroying, it is immaterial whether he be an officer or not, or how, or in what way, or for what purposes, such conversion or destruction took place.   If the defendant were acting under a warrant ever so illegal or unconstitutional, that would not place him in any worse condition than if acting without any process whatever; that would not enlarge the rights of a plaintiff who was holding his property in palpable disregard of law, or enable him to recover in avowed disobedience to

the provisions of the statute. This was the conclusion to which the Court, upon mature consideration, arrived in *Black* v. *McGilvery*, 38 Maine, 288; *Nichols* v. *Valentine*, 36 Maine, 327.

Upon the express words of the statute, as well as upon adjudged cases, no action can be maintained for the conversion or for the value of liquors held in, and for, the purposes of the violation of law, and consequently liable to forfeiture and destruction.

Has there been, then, any judicial decision by which the defendant is precluded from setting up, in reduction of damages, facts, which otherwise would be open to him, and which, without such judicial decision, would have been available ?

" The judgment of a Court of concurrent jurisdiction," says GIBSON, C. J., in 4 Watts, 191, " directly upon the point, is a plea in bar, and is evidence, conclusive between the same parties on the same matter, directly in question, in another Court. But neither the judgment of a Court of concurrent or exclusive jurisdiction, is evidence of a matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." Judgments are held conclusive upon the parties only as to that which is directly in issue. " It is only when the point in issue has been determined, that the judgment is a bar." Greenl. Ev. § 529. " So, also, in order to constitute the former judgment a complete bar, it must appear to have been a decision *upon the merits*," &c. Greenl. Ev. § 530. If the suit is discontinued, or the plaintiff becomes nonsuit, or there is no judgment upon the matter in issue, the proceedings are not conclusive.

When the proceedings are *in rem*, the decree of a Court of peculiar and exclusive jurisdiction, whether of condemnation or acquittal, is binding upon all parties. *Gilston* v. *Hoyt*, 13 Johns. 561. A judgment *in rem* is an adjudication upon the *status* of some particular subject matter, by a tribunal having competent authority for that purpose. Such adjudication concludes all persons from saying the thing adjudicated upon was

not such as is declared by such adjudication.   2 Smith's Lead-
ing Cases, 430.

In the case at bar the judgment was, "that the complaint
be hence dismissed, and that the said Rufus M. Lord have
a return of his liquors so as aforesaid seized, returned upon
said warrant and in the keeping of said Kimball," &c.

Whether the officer would or would not be in contempt for
disobedience of the order of Court, is not a question presented
for consideration.

It is apparent, from the record, that there has been no trial
of the guilt or innocence of Lord, nor any adjudication as to
the *status* of the liquors seized.   If the proceedings be re-
garded as *in rem*, there has been no judgment of condemna-
tion or acquittal.

If, as may be regarded as probable, the complaint was
dismissed for want of form, or if, indeed, for want of juris-
diction, there remained no mode by which the *status* of the
liquors could be judicially determined.   They were equally
liable to seizure again, upon a new complaint, as is a respon-
dent, who may have been discharged upon a *nol. pros.*   The
*status* of the liquors was neither tried nor determined.   Nor
does it appear by the judgment that they have been acquitted.
It seems rather to resemble a *nol. pros.* or nonsuit, in which
the judgment is not conclusive.

But even if these proceedings were to be regarded as con-
clusive upon the general question of the right of the 'plaintiff
to restitution, yet, as the *status* of the liquors has never been
judicially settled, they can, in no event, be binding as to the
*value* of the liquors in dispute.   That question still remains
open to the parties.   If they were held by the plaintiff to be
used in open violation of law, that fact was most material in
reference to the question of value.   As the question, whether
these liquors were held in violation of law, has never been
determined, and as their *status* is a matter essential in deter-
mining their value, it must be regarded as still open to the
defendant, to show these facts; otherwise his rights will be
concluded by a judgment to which he was not a party and in

which the *status* of the liquors neither was nor could be considered.

It was held in *Moulton* v. *Smith*, 32 Maine, 406, that in replevin a verdict of *non cepit*, and a judgment for a return, are not conclusive upon the question of property. They only show, that for some cause, the defendant was not entitled to possession. Still less would it bind a party as to the question of value. In the present case, the order for a return gives no indication of the *status* of the goods, nor of their value. There is no judgment, which would be a bar to a new complaint; and, if so, there has been no fact determined inconsistent with the evidence offered and rejected. The complaint may have been properly dismissed and yet the liquors may have been kept for sale in violation of law. If they were so kept, that fact is material in determining the damages to which the plaintiff would be entitled. Whether they were so kept was an issuable fact, which has never been judicially determined and which is important in the assessment of damages. The evidence offered and rejected should have been received. *Exceptions sustained.*

TENNEY, C. J., and RICE, J., concurred.

GOODENOW, J., having been of counsel, did not sit.