JAMES HARRISON *v.* ORAMEL H. NICHOLS AND ALBERT NICHOLS.

*Construction of the act prohibiting any action for the recovery of intoxicating liquor or its value.  Deposition.*

The clause in the 21st sec. of the act of 1852, in regard to the traffic in intoxicating liquor, which provides that no action shall be maintained for the recovery or possession of intoxicating liquor, or the value thereof, except such as are sold or purchased in accordance with the provisions of that act, does not prohibit the owner of intoxicating liquor, purchased out of this State and not intended to be held or sold here contrary to law, from maintaining an action against one who has unlawfully taken it out of his possession in this State.

The purpose of this provision was to prevent the enforcement of any contract for the sale of liquor contrary to law, by any action, either for the liquor itself or its price.  PIERPOINT, J.

The fact that liquor, purchased elsewhere, is kept in this State with the intention of selling it contrary to the laws of another State, does not prevent the owner from maintaining an action against a trespasser for taking it.

It is sufficient in the caption of a deposition to say that it is taken at the request of "the plaintiff," if the name of the plaintiff is stated in the caption in the description of the action in which the deposition is taken to be used.

TRESPASS for one barrel of gin, one barrel of brandy and one barrel of cherry brandy.  Plea, the general issue, and trial by jury, at the December Term, 1858,—REDFIELD, Ch. J., presiding.

On trial the plaintiff introduced one Cummings as a witness, who testified that from 1853 to 1858, he carried on business in the plaintiff's name, at West Lebanon, in the State of New Hampshire, and during the first two or three years of that time he was dealing in the plaintiff's name to some extent in the purchase and sale of intoxicating liquor; that in the fall of 1853, he purchased, in the name of the plaintiff, of a firm in New York, through their agent at West Lebanon, the barrel of cherry brandy and the barrel of gin in question; and in August, 1854, he purchased of the same firm the barrel of brandy in controversy; that this liquor was all sent to the railroad station at White River Junction, in this State, that being the nearest station to West

Lebanon, where it remained until taken by Williams, as hereinafter stated; that on the 28th of September, 1854, he, Cummings, having abandoned the liquor business, one Williams, who was then keeping a public house at White River Junction, applied to him at West Lebanon to purchase some liquors, but was told by him that he had some liquors belonging to the plaintiff, which, however, he declined to sell; that finally he consented that Williams might take the barrel of brandy above mentioned to his house, and use what he wanted out of it on that day (it being on the occasion of an agricultural fair), and return the cask to the witness, and pay for what he should have used, but that he did not consent to his taking the cherry brandy or the gin.

The plaintiff introduced other evidence tending to show that in fact Williams did on the 28th of September, 1854, remove all three of the casks of liquor in question from the railroad depot to his house, and tapped the cask of brandy and the cask of gin, and sold liquor therefrom; that they were all thus removed because they could not tell at the depot which was the cask of brandy, and that while the liquor was at Williams' hotel it was taken therefrom by the defendants, on the 2d of October, 1854.

The defendants introduced evidence tending to show that Cummings was the owner of the liquor in question, and that it was purchased and kept by him for sale contrary to law, and was in fact sold by him to Williams, and was taken to the latter's hotel by Cummings' consent, and was intended to be sold by Williams contrary to law, and that such portion as was sold by Williams was sold in violation of law, and with the knowledge and consent of Cummings; that the liquor in question was attached by the defendant, Oramel H. Nichols, as a deputized officer, on sundry writs of attachment against Williams, and that the defendant, Albert Nichols, assisted Oramel, at his request, in making such attachments; that judgments were duly obtained in the suits upon which these attachments were made, and executions duly issued and put into the hands of Oramel Nichols, who was duly authorized to serve the same, in season to preserve the lien created by the attachments, and that the casks of liquor in question were duly sold by him on such executions.

The defendants introduced in evidence the Compiled Statutes of New Hampshire, showing that by a law passed in that State in the year 1849, the sale of spirituous liquors is prohibited under a penalty therein named, unless the same is sold by a person licensed by the selectmen of the town to sell for "medicinal, mechanical and chemical purposes, and for no other use or purpose."

It was not shown that Cummings, or the plaintiff, had any license to sell liquor for any purpose, either in New Hampshire or Vermont, and it was not pretended that any such license had been granted.

The defendants requested the court to charge the jury as follows: 1st, that the plaintiff could not recover unless the liquor was purchased and kept with the intention and for the purpose of being used for medicinal, chemical and mechanical purposes only, or with the intention of being sold to, or by, an agent legally authorized to sell liquor for those purposes; 2d, that if the liquor was purchased and kept with the intention and for the purpose of being sold contrary to law, either in New Hampshire or Vermont, the plaintiff could not recover; 3d, that if Cummings in fact owned the liquor, although he may have purchased the same in the name of the plaintiff, the plaintiff could not recover.

The court declined to charge the jury according to the first and second requests, but did charge them in such a manner that no exceptions were taken in regard to the third request. As to the first and second requests, the court charged the jury that if the liquors were purchased and kept, at the time the defendants took them, for sale in this State, contrary to the provisions of the statute (specifically pointing out to the jury what sales the statute regarded as legal, in a manner not objected to), the plaintiff could not recover; but if the liquor was purchased for sale in New Hampshire, contrary to law, and while on its way there, the plaintiff, being the owner, altered his mind in regard to the use to which he would put it, and had it kept at the depot at White River Junction for some purpose consistent with the statute of this State, and at the time Williams came to his agent, Cummings, both the plaintiff and his agent did not intend to sell it, except to some duly authorized agent to sell for medicinal,

chemical and mechanical purposes, or to put it to any purpose prohibited by the laws of this State, and was only over-persuaded by Williams to let him have some brandy in an emergency, this would not forfeit his title to what remained after Williams' license had expired, and if, after that, the defendant took it as a mere trespasser, the plaintiff might recover its value, and interest thereon, from the time of taking, notwithstanding any provision in the statute.

The jury were also told that if the liquors in question were procured in New York for the purpose of sale in the State of New Hampshire, contrary to the statute of that State, and were on their transit for that destination, the plaintiff's title would not be so far divested, before their arrival within the limits of the State of New Hampshire, through the operation of the statute of that State, as to preclude the plaintiff from recovering against a mere trespasser, the value of the liquors so taken.

To the refusal of the court to charge the jury as requested, and to the charge as above detailed, the defendants excepted.

During the trial the plaintiff offered the deposition of one Jennings, taken in the State of New Hampshire, with the following caption :

" The above deposition, taken at the request of the plaintiff, to be used in a case to be heard and tried before the honorable county court next to be holden at Woodstock, within and for the county of Windsor, on the fourth Tuesday of May, A. D. 1857. In which cause James Harrison, of Norwich, in the county of Windsor and State of Vermont, is plaintiff, and Albert Nichols, of Bradford, in the county of Essex and Commonwealth of Massachusetts, and O. H. Nichols, of Hartford, in the county of Windsor and State of Vermont, are defendants. The deponent living out of the State, the adverse party were notified and did attend.

Certified by me, Daniel Richardson, Justice of the Peace."

The defendants objected to the admission of this deposition on account of the informality of the caption, but the objection was overruled by the court, and the deposition admitted, to which the defendants excepted.

*Converse & French*, for the defendants.

1. The State has full power, as a matter of police regulation, to control and even entirely interdict the sale of certain articles, including intoxicating liquors, and, if it sees fit, to declare such articles contraband and a nuisance, and to provide for their forfeiture and destruction. The State has the power to forbid the importation of such articles, and to enact that they shall not be the subject of property, and that no action of any kind shall be maintained in its courts of justice for the recovery of them or their value, in any way; 2 Kent's Com. 340; License Cases, 5 Howard 504, 589, 631; *Lincoln* v. *Smith*, 27 Vt. 339; *Fisher* v. *McGirr*, 1 Gray 1.

2. We insist that it was the purpose of the legislature in enacting the law of 1852, in regard to the traffic in intoxicating liquor, to prevent the use of such liquor as a beverage, and to accomplish this by rendering all liquor forfeit and contraband which is not kept for sale according to the provisions of the law, and by providing that, when not so kept, it shall not be the subject of any action at law whatever, either for the recovery of its possession or value.

This construction is sustained not only by the spirit of the whole law throughout, but by the very letter of the 21st section.

The statute of Maine, which received a different construction in *Proctor* v. *Drew*, 33 Maine 558, was a different law in spirit and intention. That was a law for "the suppression of drinking houses and tippling shops," a purpose much less broad in its hostility to intoxicating liquor than that of our law of 1852, which is to suppress its use as a beverage, *generally*, and not merely in disorderly drinking shops.

If the prohibition of an action at law in the 21st section is to be construed as referring only to liquor sold *contrary* to law, it is merely the re-enactment of a common law principle, which was entirely unnecessary.

3. But if the liquor was kept in Vermont and intended for sale in New Hampshire, contrary to the law of that State, it was contraband, and can not be the subject of an action in our courts; *Commonwealth* v. *Cone*, 2 Mass. 132; *Spaulding* v. *Preston*, 21 Vt. 9.

4. The caption of Jennings' deposition was informal, in not

containing in the proper place the name of the person at whose request it was taken. The State in which the cause was to be tried is not named.

*Washburn & Marsh* and *R. Lund,* for the plaintiff.

PIERPOINT, J. This action was brought to recover the value of a quantity of intoxicating liquor, claimed by the plaintiff, and which was taken by the defendants, by attachment, on a writ against a third person.

The main question in this case arises on the charge of the court, and their refusal to charge as requested by the defendants.

The defendants requested the court to charge the jury that to entitle the plaintiff to recover it must appear that the liquor was purchased and kept to be used for medicinal, chemical and mechanical purposes only, or with the intention of being sold to, or by, an authorized agent for these purposes.

The court declined to charge as requested, but did charge the jury, substantially, that if the liquors were purchased and kept, at the time the defendants took them, for sale in this State, contrary to the provisions of the statute, the plaintiff could not recover; but that if purchased and kept for some purpose consistent with the statute of this State, without any intent on the part of the plaintiff, or his agent, to sell them except to some duly authorized agent for medicinal, chemical or mechanical purposes, or to put them to any purpose prohibited by the statute, and the defendants took them as mere trespassers, the plaintiff was entitled to recover.

The defendants base their claim to the charge requested upon the last clause of the 21st section of the act of 1852, entitled "an act to prevent traffic in intoxicating liquors for the purpose of drinking," and insist that by the terms of that section, all recovery of, or for, liquors is prohibited, except such as are kept for medicinal, chemical and mechanical purposes, or for sale to, or by, an agent legally appointed according to the provisions of that act. That part of the section referred to and which is relied upon, is in these words: "no action of any kind shall be had or maintained in any court in this State, for the recovery or possession of intoxicating liquor, or the value thereof, except such as is

sold or purchased in accordance with the provisions of this act." In construing this language and ascertaining what the legislature meant by it, it may be well to look at the object of the legislature in passing the act, in connection with the means they adopted to effect that object. That the object sought to be accomplished was the suppression of the use of intoxicating liquor as a beverage, all will agree. An examination of the act shows that the means, by which the legislature intended to accomplish the end, was a prohibition of the *sale* of the article for the purposes of drinking. The use of the article is not prohibited; the sale only is prohibited; the penalties of the act are imposed upon the seller; all the restrictions, prohibitions and obstructions, that are created by the statute, are designed to operate upon the *sale* of liquor, and to prevent the traffic in it for the purpose of drinking. And among the means to prevent such sale, the section in question presents a very efficient one. We think the language used throughout the entire section, plainly indicates the object and intent of the legislature in enacting the clause now under consideration.

In the first part of the section it provides that, "all payments or compensations for liquor sold in violation of law, etc.," "shall be considered to have been received in violation of law, without consideration, and against law, etc.," and then provides that no action shall be maintained to recover liquor, or its value, except such as is sold or purchased in accordance with the provisions of the act; thus indicating the clear and obvious intent to declare all sales of liquor in violation of this law void; and all payments made on such sales to be without consideration; and to provide that no action should be maintained to enforce any right or interest in, or to, such liquor, or the value of it, based on any such contract or sale. The expression "such as is sold or purchased," clearly shows the idea that was in the minds of the framers of the law. It was to throw this additional restraint and restriction around the sale of the article, that no contract in relation to it made in violation of law, should be enforced in any court in this State.

This is clearly all that the language of the act imports, the exception of "all such as are sold or purchased in *accordance* with the provisions of the act," is the same as an exception of all

such as are not sold or purchased in *violation* of the provisions of the act. That which is not a violation of the act is in accordance with it.

What rule is to be applied, as between a person who is the owner or keeper of liquor, with intent to sell it in violation of law, and a mere trespasser who takes the liquor from him, is a question that it is not necessary now to determine, as the county court gave the defendant the full benefit of all that he could claim on that ground.

It is also claimed by the defendant that the county court were wrong in charging the jury that if the liquor was purchased by the plaintiff in New York with the intent to sell it in New Hampshire, in violation of the law of that State, and was on its way to New Hampshire for the purpose of being so sold, that would not prevent the plaintiff's recovery against a mere trespasser.

This charge, we think, was clearly correct. There is nothing in the laws of this State that prohibits the inhabitants of any of the other States from transporting intoxicating liquor across this State to an adjoining State, even though with the intent to sell it in violation of the laws of such adjoining State. It is no violation of the law here, and the courts of this State are not called upon to protect the inhabitants of New Hampshire against the violation of their laws. They have courts that will be found fully adequate to the discharge of that duty.

The case of *Commonwealth* v. *Cone*, 2 Mass. 132, relied on by the defendants, is not an analogous case. In that case, the respondent was charged with being possessed of ten forged bills of the Nantucket Bank, knowing the same to be forged, with intent to utter and pass the same as genuine, and to injure and defraud the bank. It appeared on trial that it was the intent of the respondent to pass the bills in Connecticut, and the court held that having the bills in his possession with the intent to pass them to defraud the bank, constituted the offence under their statute; that it was entirely immaterial where he intended to pass them; the effect on the bank would be the same. He was found guilty of a violation of the statute of Massachusetts.

Here the jury have found that the plaintiff did not hold the liquor in violation of, or with any intent to violate any law of Vermont.

The objections taken to the deposition of Jennings, we think were not well founded. The certificate of the magistrate states that the deposition was taken at the request of the plaintiff, without naming him, but in the other part of the same certificate it is stated who the plaintiff was. This, we think, removes all doubt in regard to the matter, and the place where it was to be used is sufficiently apparent to make it admissible.

We find no error in the proceedings of the county court.

Judgment affirmed.