## BLUNK v. WAUGH *et al.*

No. 1601.   Opinion Filed March 12, 1912.

Rehearing Denied April 9, 1912.

(122 Pac. 717.)

1. **INTOXICATING LIQUORS—Recovery of Possession—Evidence.** In an action by one individual against another individual to recover the possession of intoxicating liquors, it is not necessary for the plaintiff to affirmatively show that the defendant did not secure possession of the liquors under the provisions of section 7, art. 3, of chapter 69, Sess. Laws 1907-1908.

2. **SAME—Offenses Against Liquor Law—Interstate Commerce—Recovery of Possession.** One Blunk, doing business under the name "Oklahoma Distributing Company," was engaged in the business of receiving large consignments of intoxicating liquors, consigned to him as consignee by a brewery in another state. These consignments were intended for distribution to a number of individuals whose names were written upon the respective parcels. Blunk's business was to pay the freight, receive the shipments, and deliver the several parcels to the various persons whose names were written thereon. **Held:**

(a) That this business is in violation of the laws of the state of Oklahoma (Comp. Laws 1909, sec. 4180).

(b) That this business is not protected by the Constitution and laws of the United States regulating interstate commerce in intoxicating liquors.

(c) That the courts will not entertain an action of replevin to enable Blunk to recover such intoxicating liquors from a trespasser, where it is shown by his pleadings in the case that the purpose of his attempted recovery is to engage in a business in violation of the laws of the state.

(Syllabus by Ames, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action in replevin by D. M. Blunk against B. J. Waugh and another. From an order sustaining a motion to quash the writ of replevin, plaintiff brings error. Affirmed.

*Giddings & Giddings,* for plaintiff in error.

*Charles West,* Atty. Gen., *amicus curiae.*

Opinion by AMES, C.   D. M. Blunk, the plaintiff, brought an action of replevin, in the superior court of Oklahoma county, against B. J. Waugh and John Queenan, the defendants, to recover the possession of 105 casks of beer.   He alleged that he was the special owner of the beer, because it had been shipped to the Oklahoma Distributing Company, which was the name under which he was doing business, from St. Louis, Mo., and that his purpose was to deliver it to certain parties, for whose benefit it was intended by the shippers.   He procured the issuance of a writ of replevin, and in his affidavit on which the writ was based he sets up the facts constituting his claim of special ownership as follows:

"Now comes D. M. Blunk, plaintiff, doing business under the name and style of the Oklahoma Distributing Company, and says that he is the special owner of, and entitled to the immediate possession of, the following described property, to wit, 105 casks of Anheuser-Busch beer, known as Budweiser beer, each cask marked 'B. S.,' and each cask of the value of $10.02, said 105 casks being of the aggregate value of $1,052.10, each cask containing thereon certain tags by which it could further be identified, but said tags have been destroyed and obliterated by the defendants since they obtained possession thereof, as hereinafter set forth, and plaintiff cannot give any further description thereof. Plaintiff alleges that his special ownership of said beer arises out of the following facts:   That said beer was shipped from the state of Missouri by the Anheuser-Busch Company consigned to the Oklahoma Distributing Company, which is the style under which plaintiff is doing business, to certain parties in Oklahoma City, whose names were marked upon each cask, but whose names have been obliterated by the defendants since they took possession thereof; it being intended by the consignors and consignees that plaintiff, in whose name they were consigned for the benefit of said parties, should receive the same from the railroad company, pay the freight thereon, and deliver same to said consignees. That plaintiff is entitled to the immediate possession of said beer, but the same is wrongfully detained from him by the said defendants, and that said property was not taken in execution or on any order of judgment against said plaintiff, or for the payment of any tax, fine, or amercement assessed against him, or by virtue of any order of delivery issued in replevin, or any other valid means or final process issued against him."

Some of the material facts disclosed by this affidavit are: (1) That the beer was shipped from another state; (2) that the plaintiff was the consignee; (3) that he was doing business under the name of the Oklahoma Distributing Company; (4) that the names of a number of people were marked on the casks; (5) that it was intended by both the consignor and the consignees that the plaintiff ·should receive the beer from the railroad company; (6) that he should pay the freight thereon; (7) and that he should deliver the same to the various persons for whom it was intended. Bond was given, a writ was issued, and the beer taken under the writ. The defendants filed a motion to quash the writ, for the following reasons:

"That the affidavit filed in said cause is insufficient, in that it does not state that said property was not taken under or by reason of any order, execution, or writ issued under and by virtue of the provisions of section 7 of article 3 of chapter 69, Sess. Laws 1907-1908, commonly called the 'Billups Bill.' That said affidavit is insufficient in that it does not show that the plaintiff or affiant has such an ownership in the property as entitles him to the possession thereof."

This motion was sustained by the trial court, and this appeal is prosecuted to review that ruling.

The first question presented is whether or not it is necessary, in an action of replevin to recover intoxicating liquors, for the plaintiff to show that they have not been seized by the defendants pursuant to the provisions of section 7, art. 3, c. 69, Sess. Laws 1907-1908 (Comp. Laws 1909, sec. 4186), which provides as follows:

"No liquors, vessels, fixtures, furniture or other property seized by virtue of any warrant issued under the provisions of this act shall be taken from the possession of the officer seizing same under any replevin or other process."

The affidavit complies with the requirements prescribed for an affidavit in replevin. Comp. Laws 1909, sec. 5688. There is nothing in this record to show that the defendants are officers, or that they had seized, or had a right to seize, the liquor by virtue of any authority. If they were officers and had made this seizure pursuant to their duties, it would have been very

easy for them to disclose this fact, and thereby brought themselves within the protection of the statute quoted. It is the settled law of this state that a person may acquire intoxicating liquors in a lawful way and for lawful purposes. *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804; *St. Louis & S. F. R. Co. v. State,* 26 Okla. 300, 109 Pac. 230; *Titsworth v. State,* 2 Okla. Cr. 268, 101 Pac. 288; *Gulf, C. & S. F. Ry. Co. v. State,* 28 Okla. 754, 116 Pac. 176, 35 L. R. A. (N. S.) 456. It is also held that the mere possession of intoxicating liquor in considerable quantities is not a violation of the law. *Johnson v. State,* 6 Okla. Cr. 490, 119 Pac. 1019; *McCarthy v. State,* 6 Okla. Cr. 483, 119 Pac. 1020.

As such liquors may be lawfully held, the mere fact that one seeks to recover their possession by an action of replevin does not raise any presumption that the defendants have seized them because the plaintiff was holding them for the purpose of violating the law, and it therefore follows that the plaintiff is not required to negative the theory that he is guilty of an intent to violate the law, because guilt is never presumed. We do not think, therefore, that the first ground of the motion to quash is well taken. This conclusion finds support in *Easter v. Traylor,* 41 Kan. 493, 21 Pac. 606; *Ament v. Greer,* 37 Kan. 648, 16 Pac. 102; Black on Intoxicating Liquors, sec. 342.

A more serious question is raised by the second ground of the motion to quash, and in considering this question we will determine: First, whether the business in which the plaintiff is engaged is in violation of the laws of this state; second, if so, is it protected by the Constitution and laws of the United States regulating interstate commerce; and, third, if not so protected, has the plaintiff such a right of property in liquors as will be protected in a civil action.

The affidavit in replevin has been previously analyzed. The business in which the plaintiff is engaged is that of receiving large consignment of intoxicating liquors, paying the freight thereon, and delivering the same to numerous persons, for whom the various packages are intended. The name under which the plaintiff

transacts this business in suggestive — "Oklahoma Distributing Company." It does not appear whether the plaintiff is the agent for the consignors or the ultimate purchasers, or both, or whether the orders are solicited by him. But it does distinctly appear that he is engaged in the business as stated. Such a business might be carried on in various ways. The 105 persons for whom these 105 casks of beer were intended might have requested the plaintiff to make the order for them, and he might have communicated this request to the brewery, and the brewery might have consigned him the beer with the several names of these 105 persons on the several casks. The plaintiff might have solicited the orders from these 105 persons and then ordered from the brewery. The brewery might have sold direct to the 105 persons, and shipped to the plaintiff to distribute for it. It is manifest that in order to engage in this business there must have been concert of action between the plaintiff and the brewery, and likewise between the plaintiff and the individuals for whose benefit the beer was shipped. Section 4180, Comp. Laws 1909, is as follows:

"It shall be unlawful for any person, individual or corporate, to manufacture, sell, barter, give away, or otherwise furnish except as in this act provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor; or to manufacture, sell, barter, give away, or otherwise furnish any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; or to ship or in any way convey such liquor from one place within this state to another place therein except the conveyance of a lawful purchase as herein authorized; or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card, price list, advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnish, or to have the possession of any such liquors with the intention of violating any of the provisions of this act. A violation of any provision of this section shall be a misdemeanor, and shall be

punished by a fine of not less than fifty dollars nor more than five hundred dollars and by imprisonment for not less than thirty days, nor more than five hundred dollars and by imprisonment for not less than thirty days, nor more than six months; provided, however, that the provisions of this act shall not apply to the manufacture and sale of fermented cider and wine made from apples, grapes, berries or other fruit grown in this state, and to the use of wine for sacramental purposes in religious bodies."

. If plaintiff was the agent of the brewery and was distributing its beer for its benefit, it is manifest that he was furnishing such liquor within the prohibition of the statute. If, on the other hand, the plaintiff received this consignment as the agent of the 105 persons to whom the beer was to be delivered, it is plain that after he received it from the railroad company it had been delivered to the consignee, he being the consignee, and that his subsequent acts in delivering the 105 casks to the 105 owners was conveying it from one place to another within this state. It is likewise manifest, if the plaintiff was engaged in the business on his own account, that he was merely operating a saloon in this ingenious manner, and that therefore he was either selling or giving away, or otherwise furnishing, the beer. It is manifest therefore that the business of the plaintiff is in violation of the laws of this state. The next inquiry, therefore, is whether such unlawful business is protected by the Constitution and laws of the United States regulating interstate commerce. The Constitutional provision is as follows (article 1, sec. 8):

"Congress shall have power: * * * To regulate commerce with foreign nations, and among the several states, and with the Indian tribes; * * * to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof."

Under this section of the Constitution it was held, in *Leisy v. Hardin,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, popularly known as the "original package decision," that intoxicating liquors were protected as interstate commerce after their shipment into a prohibition state, and until their sale in the original

package in which they were transported. As the effect of this decision was practically to strike down the prohibition laws of any state, Congress passed an act on August 8, 1890, commonly known as the "Wilson Act," providing as follows (Act Aug. 8, 1890, c. 728, 26 Stat. 313, 3 Fed. Stat. Ann. 853 [U. S. Comp. St. 1901, p. 3177]) :

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

The question soon arose as to the proper interpretation of the words "upon arrival in such state," and they were finally interpreted to mean upon arrival in the state and delivery to the consignee. *State v. Eighteen Casks of Beer*, 24 Okla. 786, 104 Pac. 1093, 25 L. R. A. (N. S.) 492; *St. Louis & S. F. R. Co. v. State,* 26 Okla. 300, 109 Pac. 230; *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804; *High v. State,* 2 Okla. Cr. 161, 101 Pac. 115, 28 L. R. A. (N. S.) 162; *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088; *Vance v. Vandercook,* 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; *Heymann v. Southern R. Co.,* 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178, 7 Ann. Cas. 1130; *Adams Exp. Co. v. Ky.,* 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987.

On March 4, 1909, Congress, in order to further restrict interstate commerce in intoxicating liquors, enacted sections 238, 239, and 240, of the New Federal Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1136, 1137; Fed. Stat. Ann. Supp. 1909, 472, 473 [U. S. Comp. St. Supp. 1909, pp. 1464, 1465]). Section 238 is as follows:

"Any officer, agent, or employee of any railroad company, express company, or other common carrier, who shall knowingly deliver or cause to be delivered to any person other than the person to whom it has been consigned, unless upon the written order

in each instance of the *bona fide* consignee, or to any fictitious person, or to any person under a fictitious name, any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind which has been shipped from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall be fined not more than five thousand dollars, or imprisoned not more than two years, or both."

It will be observed that this section accomplishes two objects: First, it prohibits any employee of any carrier from delivering such a shipment to any one except the *bona fide* consignee, or upon his written order; and, second, it prohibits any such employee from making any such delivery to any fictitious person, or to any person under a fictitious name. The question may arise as to whether the Oklahoma Distributing Company is a fictitious name; but it is not necessary for us to determine that precise question in this case.

Section 239 is as follows:

"Any railroad company, express company, or other common carrier, or any other person, who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars."

It will be noticed that this section prohibits C. O. D. business, and also prohibits any person from in any manner acting as the agent of the buyer or seller of any such liquor, for the purpose of buying, or selling, or completing the sale thereof, saving only in the actual transportation and delivery. Under this section Judge Amidon, sitting as a district judge in North Dakota, has sustained the conviction of a bank for collecting a draft to which was attached a shipper's order bill of lading for a consignment of liquor. *United States v. First Nat. Bank of Anamoose* (D. C.) 190 Fed. 336.

Section 240 is as follows:

"Whoever shall knowingly ship or cause to be shipped, from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, any package of or package containing any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein, shall be fined not more than five thousand dollars; and such liquor shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the seizure and forfeiture of property imported into the United States contrary to law."

It will be observed that this section prohibits the shipment of intoxicating liquors in interstate commerce without plainly designating the name of the consignee, the contents of the package, and the quantity of liquor.

It is manifest that these three sections greatly limit the previous course of dealing in interstate shipments of intoxicating liquors, and, broadly speaking, they limit such commerce to a direct transportation only of the liquor from the seller to the buyer. If the plaintiff is "any person under a fictitious name," then it was a criminal offense for the carrier to deliver to him

the liquor. If he was the *bona fide* consignee, then the interstate transaction was completed upon delivery to him, and any subsequent delivery by him to the 105 owners was a plain violation of the state law. If he was not the *bona fide* consignee, then it was a violation of the congressional act for the liquor to be delivered to him without a written order. If he was acting as the agent of the buyer in completing this sale, then he was guilty of a criminal offense. If he was acting as the agent of the seller in completing the sale, then he was guilty of a criminal offense. If the payment of the freight was a payment of the purchase price, or any part thereof, then a criminal offense was committed. Even before these last expressions of Congress on the subject, the court had held that a state had the power to prohibit a foreign dealer in liquors from maintaining a soliciting agent in the state, although the sales were not completed until acceptance outside the state, and the agent did nothing but solicit the orders. *Delamater v. South Dakota,* 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733. And in *Buchanan v. State,* 4 Okla. Cr. 645, 112 Pac. 32, it was held that an agent of the buyer of intoxicating liquor sold in violation of the law is guilty of a crime. And in the recent case of *State of Iowa v. Wignall,* 150 Iowa, 650, 128 N. W. 935, 34 L. R. A. (N. S.) 507, the Supreme Court of Iowa has upheld a statute prohibiting a consignee from employing a third person to transport intoxicating liquor from the depot to his residence, although the correctness of this decision is subject to doubt in view of section 238 of the Penal Laws previously quoted, as well as the decisions of this court and of the Criminal Court of Appeals of this state, which have previously been cited. Comp. Laws 1909, sec. 4197.

The argument is made by the plaintiff, however, that if these 105 casks of beer might have been shipped in 105 separate express packages, and have been delivered by the express company to the 105 consignees, there is nothing illegal in the business which he is transacting. This argument, however, overlooks the fundamental and substantial difference between the plaintiff and the express company. The express company is a common car-

rier pure and simple, and can be compelled to accept for transportation and delivery any legitimate article of commerce, and its entire service, rendered in connection with a shipment of intoxicating liquors, is in the actual transportation and delivery thereof. For us to believe this of the plaintiff requires an amount of credulity which we do not possess. The plaintiff is engaged in the business of receiving large consignments of intoxicating liquor by interstate carrier, and distributing them to a large number of small consumers in Oklahoma City. He is either the *bona fide* consignee of these large shipments, or he is not. If he is the *bona fide* consignee, it is plain that the shipment is terminated when received by the plaintiff, and certainly his disposition of it thereafter cannot possibly be protected as a part of interstate commerce. To do so would in substance reinstate the original package law, which Congress has expressly legislated against. If the plaintiff is not the *bona fide* consignee, then his business involves a violation of the sections in the Penal Laws of 1909, which we have quoted. It therefore seems to us a demonstrable fact that the business of the plaintiff is not, and cannot be, protected by the Constitution and laws of the United States, and this conclusion is reached without considering several other aspects of the plaintiff's business which seem to conflict with those sections of the Penal Laws.

The last question for consideration, then, is whether the plaintiff will be permitted to recover this property which he designs to use in violation of the laws of the state. Will the courts open their doors to enable a man to engage in a business which is condemned by the law? In this case the plaintiff bases his application for the writ of replevin upon a desire to complete a violation of our laws, which the seizure by the defendants has interrupted. It seems to us that the mere asking of this question is its answer, and particularly is this true when we bear in mind the provision of our statute (Comp. Laws 1909, sec. 4192) which is as follows:

"There shall be no property rights of any kind whatsoever, in any liquors, vessels, appliances, fixtures, bars, furniture and

implements kept or used for the purpose of violating any provision of this act."

Some of the cases which support this conclusion are *Oviatt v. Pond,* 29 Conn. 479; *Preston v. Drew,* 33 Me. 558, 54 Am. Dec. 639; *Lord v. Chadbourne,* 42 Me. 429, 66 Am. Dec. 290; *Barron v. Arnold,* 16 R. I. 22, 11 Atl. 298; *Harrison v. Nichols,* 31 Vt. 709. There are several decisions which hold that, in the absence of a statute to the contrary, the owner of such liquors may maintain an action for their possession. *Smith v. Dinkelspiel,* 91 Ala. 528, 8 South. 490; *Niles v. Fries,* 35 Iowa, 41; *Priest v. Pinkham,* 18 N. H. 520. Other cases are referred to in 23 Cyc. 334, and 17 A. & E. Enc. of Law (2d Ed.) 302.

It is well established—we might say universally established—that the courts will not enforce any rights which directly arise out of an illegal contract. *Holden v. Lynn,* 30 Okla. 663, 120 Pac. 246; *Citizens' National Bank of Chickasha v. Mitchell,* 24 Okla. 488, 103 Pac. 720, 20 Ann. Cas. 371; *Wagner v. Minnie Harvester Co.,* 25 Okla. 558, 106 Pac. 969; *Binswanger v. Stanford,* 28 Okla. 429, 114 Pac. 621, in which the earlier Oklahoma cases are cited; *Bowman v. Phillips,* 41 Kan. 364, 21 Pac. 230, 3 L. R. A. 361, 13 Am. St. Rep. 292; *Tatum v. Kelley,* 25 Ark. 209, 94 Am. Dec. 717; *Graves v. Johnson,* 156 Mass. 211, 30 N. E. 818, 15 L. R. A. 834, 32 Am. St. Rep. 446; *Banchor v. Mansel,* 47 Me. 58; *Hanauer v. Doane,* 12 Wall. 342, 20 L. Ed. 439; *Fisher v. Lord,* 63 N. H. 514, 3 Atl. 927.

If the courts will not open their doors to enforce an illegal contract, we do not think they should lend their aid to enable a person to unlawfully engage in the liquor traffic, particularly where the statute provides that "there shall be no property right of any kind whatsoever" in any liquors kept or used for illegal purposes.

The Attorney General presents an elaborate brief in support of the position that the various acts of Congress prohibiting the introduction of intoxicating liquors into the Indian country are still in force in this state; but, in view of the conclusion that we

have reached, it is unnecessary for us to determine this question.

For the reasons herein stated, we think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.