CRESCENT LIQUOR CO. et al. v. PLATT.

(Circuit Court, N. D. West Virginia. October 24, 1906.)

1. COMMERCE—REGULATION OF INTERSTATE COMMERCE—WEST VIRGINIA STATUTE RELATING TO CARRIAGE OF LIQUORS—CONSTITUTIONALITY—DUE PROCESS OF LAW.

Acts W. Va. 1903, p. 130, c. 40, being "An act regulating the shipment and sale of intoxicating liquors contrary to law and providing a remedy therefor," and which provides inter alia that any agent or employé of a common carrier who shall deliver to any person, firm, or corporation any package containing intoxicating liquors, except to a person having a state license to sell the same, or to the bona fide consignee thereof who has in good faith ordered the same for his own use, shall be deemed to have made a sale thereof contrary to law, and be subject to criminal prosecution, in so far as it endeavors to impose criminal liability upon a carrier or its agents because of the delivery of liquors transported by it to the consignee thereof in the usual course of business, in case such consignee shall not have a license or shall not have ordered the liquors for his own use, is unconstitutional and void, as an attempt to regulate interstate commerce as applied to interstate shipments and in all cases as depriving the carrier and its agents of their liberty and property without due process of law and as denying to them the equal protection of the laws.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 711.]

2. SAME—INTERSTATE COMMERCE—INTOXICATING LIQUORS.

The Wilson Act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), which provides that intoxicating liquors transported into a state or territory for use, consumption, or sale therein shall upon their arrival be subject to the police laws of such state or territory, does not authorize the enactment by a state of a law restricting the right of an interstate carrier to deliver the imported package to its consignee.

3. CARRIERS—UNLAWFUL DISCRIMINATION—REFUSAL TO CARRY LIQUORS.

It is the duty of an express company doing business as a common carrier to serve the public impartially, and it has no right to refuse to receive and carry packages of liquors from lawful dealers therein in one state, while 'it receives and carries the same in other states, nor to refuse to carry the same C. O. D. and to collect and return the purchase money from the consignee in accordance with the general custom of the business, where it follows such custom with respect to other commodities; nor can it require a consignee of such liquors before delivery to furnish a certificate or affidavit that he is a bona fide purchaser of the same for his own personal use or has a state license to sell liquors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 901.]

In Equity. On motion for preliminary injunction.

Charles B. Johnson and George M. Hoffheimer, for complainants.
Frank H. Platt and Ira E. Robinson, for defendant.

GOFF, Circuit Judge. The Crescent Liquor Company, a corporation organized under the laws of the state of West Virginia, having its principal office and place of business at Clarksburg in that state. a resident and citizen thereof; the Schmulbach Brewing Company, a corporation organized under the laws of the state of West Virginia, having its principal office at Wheeling in said state, a resident and citizen thereof; and the Hoster-Columbus Associated Breweries Company. a corporation organized under the laws of the state of Ohio, and having its principal offices at Columbus in that state, a resident and citizen of the state of Ohio—have instituted this suit, and filed their original and supplemental bills, against Thomas C. Platt, of the state of New York, a resident and citizen of the state of New York, as president of the United States Express Company. The complainants are retail liquor dealers, engaged in business at Clarksburg, W. Va., who have complied with the requirements of the laws of the United States and of the state of West Virginia, relating to that business. The defendant, the president of the United States Express Company, an association organized under the laws of the state of New York, entitled to the rights and privileges of a corporation, is a common carrier doing business in the state of West Virginia, and in the Northern District thereof.

The complainants charge the United States Express Company with unjust discrimination, and with unlawful interference with their business. They allege that said company has for years past received and transported, under established rules and regulations, packages of liquors shipped by them to various persons with whom they have had dealings, at different points in West Virginia, where that company has agents and offices; that no controversy has arisen, or now exists, between the complainants and the express company, relative to the reasonableness of the charges made by the company for the transporting and delivering of such packages, or in regard to the regulations that have existed concerning the system of receiving, forwarding, and delivering the same. The complainants charge that the express company, without assigning any reason therefor justified by usage, fair dealing, and law, has lately arbitrarily and illegally, to the injury of complainants' business, to the detriment of their customers' interests, and to the prejudice of business affairs in the locality where they so

conduct their business, refused to receive from them, and transport to the parties in West Virginia to whom the same are directed, any packages containing liquors of any character, and that they have so refused, although complainants have offered to comply with all reasonable regulations concerning the same, and to pay either themselves, or by their vendees, the full charges as announced by such company for the transporting and delivering of such commodities. It is also charged that the express company, while so refusing, nevertheless will receive similar packages from like dealers in the adjoining and other states, for transportation and delivery to consignees at its offices in the state of West Virginia; and that such company declines to receive from the complainants, and from all other persons, whether located in West Virginia or elsewhere, all packages of liquor for transportation and delivery to any point in the state of West Virginia, when such packages are offered C. O. D., what is commonly known as collect on delivery shipments. Complainants, insisting that because of such conduct their business has been unlawfully interfered with by the defendant, pray for the relief found only in a court of equity, and ask that said express company be required by the order of this court to cease such discrimination, and to properly discharge its duty as a common carrier, and that pending the final disposition of this cause a preliminary mandatory injunction may issue.

With the business carried on by complainants, it is not the duty of this court to inquire, other than to determine that it is lawfully conducted, and such I find it to be. It is an avocation provided for and protected by law, one recognized by the statutes of the state of West Virginia, as well as by the laws of the United States. It is not the duty of the judiciary to philosophize concerning the moral questions involved in this business, for that under our system of laws devolves upon another branch of our government. The Supreme Court of the United States, in Scott v. Donald, 165 U. S. 58, 91, 17 Sup. Ct. 265, 269, 41 L. Ed. 632, speaking through Mr. Justice Shiras, says:

"The evils attending the vice of intemperance in the use of spirituous liquors are so great that a natural reluctance is felt in appearing to interfere, even on constitutional grounds, with any law whose avowed purpose is to restrict or prevent the mischief. So long, however, as state legislation continues to recognize wines, beer, and spirituous liquors as articles of lawful consumption and commerce, so long must continue the duty of the federal courts to afford to such use and commerce the same measure of protection, under the Constitution and laws of the United States, as is given to other articles."

Being engaged in a legitimate business, complainants are entitled to the protection of the law, and should be dealt with by the express company as it deals with its other customers. The company is a common carrier for hire, and it is its duty to receive from and transport for complainants, to such points as can be conveniently reached by its lines, for a reasonable compensation to be paid it either by complainants or their consignees, all packages of lawful merchandise, duly consigned under the usual regulations. As a common carrier it owes obligations to the public, in fact to a great degree discharges the duties of a public office, and it should not be permitted to disregard them. Such obligations and duties are not dependent upon contract, but are imposed by

the law because of public policy. The express company,. recognizing its duties as a common carrier, and respecting in other states than West Virginia its obligations to the public, offers to receive from its customers in those states such packages of liquors, other than C. O. D. packages—as it refuses to. receive from complainants, and to transport and deliver the same to points in West Virginia. Such discrimination is reprehensible, is detrimental to the interests represented by complainants, and unfair to the localities in which their business is conducted.

The express company admits that it refuses to handle the packages of liquor offered to it by complainants, as charged in their bills, and it also admits that its agents have been instructed to observe the provisions of the following order, to wit:

"United States Express Company.

"No. 49 Broadway, New York, Sept. 28, 1906.

"Liquor Shipments State of West Virginia.

"Agents All Points, West Virginia: By order of the vice president and gen'l. manager, effective at once, you are instructed that shipments of intoxicating liquors not C. O. D. from one point in West Virginia to another point in West Virginia. must not be received, and that shipments of intoxicating liquors C. O. D. from points within, or from points without the state to points within the state must be refused. This order must be enforced regardless of the regulations or orders of any other express company, and these orders supersede instructions to the contrary in joint circular 119 dated August 20th, second page, under paragraph headed 'West Virginia.' Your particular attention is called to the fact in the handling of interstate shipments of liquor not C. O. D., which shipments you are still permitted to handle, you must continue to demand from the the consignee the certificate to the effect that he has ordered the shipments in good faith for his own personal use, or that he has a license to sell, or in other words that he is a bona fide consignee. Immediately upon receipt of these instructions you will acknowledge receipt thereof.

"The orders above are positive and must be obeyed to the letter.

"C. E. Topping, Gen'l. Supt."

The express company says that it has found it necessary to issue this order, because of the construction that has been placed upon chapter 40, p. 130, of the Acts of 1903, West Virginia Legislature, by the courts of that state. Such legislation reads as follows, to wit:

"An act regulating the shipment and sale of intoxicating liquors contrary to law, and providing a remedy therefor.

"Be it enacted by the Legislature of West Virginia:

"Section 1. That any agent or employé of any person. firm or corporation, carrying on the business of a common carrier, or any other person, who, without a state license for dealing in intoxicating liquors, shall engage in the traffic or sale of such liquors, or be interested for profit in the sale thereof, or act as the agent or employé or consignor or consignee of the same, or who shall solicit or receive any order for the sale of any intoxicating liquors, or deliver to any person, firm or corporation, any package containing such intoxicating liquors, shipped 'Collect on Delivery' or otherwise, except to a person, having a State license to sell the same, or to the bona fide consignee thereof who has in good faith ordered the same for his personal use, shall be deemed to have made a sale thereof contrary to law, and guilty of a misdemeanor; and, upon conviction thereof, shall be fined not less than ten, nor more than one hundred dollars, and may, at the discretion of the court, be imprisoned in the county jail not exceeding six months.

148 F.—57

"Sec. 2. If any person shall make affidavit before any justice of the peace that he has cause to believe and does believe, any spirituous liquors, wines, porter, ale, beer or drink of like nature, are being held, sold or delivered in violation of the provisions of this act, such justice shall issue his warrant as provided in section twenty-three of chapter thirty-two of the code, and like proceedings shall thereupon be had as provided therein."

I do not see how the provisions of this act can justify the express company in its refusal to discharge its duties as a common carrier. The insistence that under this act a common carrier engaged in either interstate or state commerce could be convicted for a violation of the state license laws, in delivering packages of liquor consigned by regular dealers and received by actual consignees in the due course of business, is without merit. In such cases it is not necessary for the common carrier to take out a state license for dealing in intoxicating liquors. As a matter of course, if the agent of the carrier at any of its stations should also be engaged as a retail liquor dealer, he should protect himself by complying with the provisions of the state license law; but he incurs no liability as such dealer when he delivers to the parties to whom they are consigned packages of liquor regularly transported by the carrier. In such cases the express company does not sell the liquor. It is acting as a common carrier, delivering liquor theretofore sold, and its agreement not to deliver until charges are paid, and then to return the money to the shipper, has nothing to do with the sale, and relates only to the usage connected with its duties as a common carrier.

The express business has become a public necessity, equally so with the mails, telegraph, and telephone. It is used for public purposes by the national, state, and municipal governments, and it would materially interfere with our commercial interests as well as with our social comfort if its efficiency were crippled by either crude regulations, or ill advised legislation. The duty of the express company to receive packages from consignors in states other than West Virginia, for delivery to consignees within that state, cannot be interfered with, nor such shipments prohibited by any enactment of the Legislature of that state. An effort by state legislation to make a common carrier discharging such duty a dealer in the article so transported would necessarily fail, for, whether so intended or not, it would be held as pertaining to the regulation of commerce, and not being authorized under the police power of the state would be void. No right or privilege granted or secured by the Constitution of the United States can be withdrawn or impaired by the statute of any state, even though enacted in the exercise of its police powers. Mr. Justice Day, speaking for the Supreme Court in Dobbins v. Los Angeles, 195 U. S. 223, 237, 25 Sup. Ct. 18, 20, 49 L. Ed. 169, says:

"The state has undoubtedly the power, by appropriate legislation, to protect the public morals, the public health, and the public safety, but if, by their necessary operation, its regulations looking to either of those ends amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void. Gibbons v. Ogden, 9 Wheat. (U. S.) 1, 210, 6 L. Ed. 23; Sinnot v. Davenport, 22 How. (U. S.) 227, 243, 16 L. Ed. 243; Missouri, Kansas & Texas Ry. v. Haber, 169 U. S. 613, 626, 18 Sup. Ct. 488, 42 L. Ed. 878."

We cannot consider the decisions of the Supreme Court of the United States relating to matters of interstate commerce, without being impelled to the conclusion that a state cannot, even for what many may consider a laudable purpose—such as protecting its citizens against the evils of intemperance—enact laws which regulate commerce between its citizens and those of other states; the consent of Congress not having first been obtained. The suggestion that, under the terms of what is known as the "Wilson Act" (Act Aug. 8, 1890, c. 728, 26 Stat. 313, [U. S. Comp. St. 1901, p. 3177]), all fermented, distilled, or other intoxicating liquors transported into the state of West Virginia became upon their arrival subject to the application of the West Virginia statute referred to, is without force, for the Wilson act expressly recognizes the right to transport such articles into the state, and then makes them subject to the operation of the police power laws of the state. But, as we have already seen, laws enacted under the police powers of the state cannot in any way interfere with or regulate commerce between states, and cannot prevent the delivery of the imported package to its consignee. The Wilson act limits the regulations of interstate commerce, but it creates no new power in the state. Surely it was not intended by that enactment to permit the state, under the shield of police power, to prosecute and punish the agents of interstate commerce for acts done by them in the lawful discharge of their duties as such agents.

The West Virginia statute so quoted is not intended solely as a police regulation, for its object is to regulate the shipment and sale of intoxicating liquors, including packages imported into West Virginia from other states or foreign countries, and surely in so far as it attempts to control such interstate commerce it must be invalid. The decisions of the federal courts relating to interstate trade are based on the absolute freedom of commerce between the states. They demonstrate the right of the citizens of one state to contract to sell and purchase merchandise in another state, and they show the lack of power on the part of the state to render invalid contracts relating to interstate commerce binding in the state where made. The Supreme Court has held that a package of intoxicating liquor received by an express company in one state to be carried to another state, and there delivered to the consignee, C. O. D. for price of the package and the expressage, is interstate commerce under the protection of the commerce clause of the federal Constitution. American Express Co. v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417. In the opinion of the court in that case, it is said:

"When it is considered that the necessary result of the ruling below was to hold that, wherever merchandise shipped from one state to another is not completely delivered to the buyer at the point of shipment so as to be at his risk from that moment, the movement of such merchandise is not interstate commerce, it becomes apparent that the principle, if sustained, would operate materially to cripple, if not destroy, that freedom of commerce between the states which it was the great purpose of the Constitution to promote. If upheld, the doctrine would deprive a citizen of one state of his right to order merchandise from another state at the risk of the seller as to delivery. It would prevent the citizen of one state from shipping into another, unless he assumed the risk. It would subject contracts made by common carriers and

valid by the laws of the state where made to the laws of another state, and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper's order with drafts for the purchase price attached. and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof."

The statute referred to as the foundation of the orders issued by the express company to its agents being for the reasons mentioned invalid, it follows that said company is without justification in its refusal to accept packages of liquor for transportation and delivery C. O. D. in states other than West Virginia, and it follows that the order of the express company requiring from the consignee a certificate to the effect that he has ordered the liquors in good faith for his personal use, or that he has a license to sell, or in other words that he is a bona fide consignee, is an unwarranted interference with interstate commerce, and the exercise of a power not possessed by that company.

We come now to the consideration of the unjust discriminations against them, alleged by complainants, as made by the express company in connection with the packages offered for transportation by complainants at Clarksburg, intended for delivery at other points in West Virginia. The discussion of matters pertaining to interstate commerce was rendered necessary in disposing of the questions raised by the consideration of the West Virginia statute before mentioned. As I have stated, the express company is a common carrier, and it is the duty of that company to serve the public impartially, without fear and without favor, but with even-handed justice to all. A carrier is not discharging its duty, when by its rules, regulations, and conduct it discriminates in favor of one citizen against another, of one business at the expense of another, or of one locality to the detriment of another. Such preferences are unjust, and they result in the destruction of individual interests, and the impairment of rights that should be enjoyed by all. Complainants have the same right to ship their packages, and to conduct in the usual and regular way the business they are engaged in, that other shippers representing other avocations receive and enjoy.

The express company, admitting its duty as to interstate open packages, insists that as to all C. O. D. packages, whether offered for shipment within or without the state, it has the right in the exercise of its business discretion—suggested by both personal and public policy—to decline to receive them for transportation, and that it may refuse, should it deem it best, to enter into such contracts, involving as they do, not only the duty to transport, but also that of collecting and returning the purchase price. It is insisted that, so far as the obligations of the company as a common carrier are concerned, a difference exists between the open and the C. O. D. shipments. This may to a limited extent be conceded, and because thereof the terms of such shipments and the regulations governing them may well differ, but that does not justify the absolute refusal of the carrier to receive, transport, and deliver the C. O. D. packages. Common carriers, the defendant included, through

many years of trade and traffic, have established and built up this custom, until now, by long continued usage, it has become part of the system under which our commerce is conducted; and it is still recognized by this defendant as applicable to all persons and all packages, save only dealers in liquors and their shipments. Here again appears the discrimination against liquor dealers set forth in the bills and protested against by the complainants.

The C. O. D. package is in many respects similar to the open package. The consignee generally pays the express charges in both cases, and in neither instance is the package delivered unless such charges are paid; the same not having been prepaid by the consignor. In addition, in the C. O. D. package, the consignee pays the price of the article shipped, and the carrier transports the cash so received to the consignor, taking pay therefor. In substance, it is the same as if the consignee should send by the express company the sum of money he owes the consignor, paying the company for its services. Can the carrier decline to accept such sum and refuse to transport it? The difference in the shipments mentioned, when analyzed, is so slight that the law has trouble so far as the carrier is concerned in seeing the distinction. Should not the consignee have the right to contract with the consignor that he will send the price of the consignment by the carrier who delivers the package? If not, why not? The carrier is for the use of the public, and the public should not be deprived of such use by unreasonable regulations. Why should the express company complain, for it receives its toll for returning the price of the shipment, as well as for transporting the package?

The express company, while recognizing its duty as a common carrier to all other shippers in West Virginia, declines to receive from complainants, and from all other retail liquor dealers in that state, any consignments of liquor for delivery to consignees at any West Virginia point, on any terms or under any conditions. Dealers in all other articles may ship their merchandise, in either open or C. O. D. packages, and the shipments are eagerly accepted and promptly delivered. The avocation discriminated against is that of the liquor dealer, and the only reason assigned for such discrimination is the statute heretofore mentioned. This character of discrimination is far more destructive of trade, and ruinous of the rights of merchants and localities, than is the discrimination that shows favoritism between the individual shippers of the same class or avocation, and if permitted will enable the common carrier at its own will and pleasure, and for purposes of its own, to destroy any industry depending upon such carrier for the transportation of its product. This character of discrimination, if it can be established and continued, will place under the control of the common carriers the industries of the public, and will indirectly give to them the regulation of all traffic, both state and interstate. The power prohibited to the states would in effect be conceded to and exercised by the common carriers. If to-day they decline to accept packages from liquor dealers, to-morrow or next day the products of our mills, factories, storerooms, and farms may for some reason satisfactory to the carrier be placed under a like ban. The avocation favored to-day, may

to-morrow find that by an order of the carrier it is in the disfavored list. Doubt and uncertainty would everywhere exist—elements fearfully antagonistic to commercial prosperity. The better rule is, equal rights to all, and special favors to none.

No man, no company, no state, not even the nation, should have the power to issue an order, or enact a law, by virtue of which any one can be deprived of his right to labor that he may live, of his right to follow such lawful calling as to him seems best, of his right to the privileges and immunities by which only can real freedom be enjoyed, which rights are inalienable, and constitute the important elements in the civil liberty of every citizen of the United States.

Article 14 of the amendments to the Constitution of the United States provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It appears that said statute, when it delegates to the common carrier, or the agent of the carrier the right to determine who are bona fide consignees, and authorizes a refusal to deliver the packages to such consignees as fail to furnish what the carrier or the agent considers satisfactory evidence of bona fides, deprives those shippers who desire to have liquor sent by express of the equal protection of the laws, and abridges their privileges and immunities as citizens of the United States. The Supreme Court of the United States, in Allgeyer v. Louisiana, 165 U. S. 578, 589, 17 Sup. Ct. 427, 431, 41 L. Ed. 832, referring to a statute of the state of Louisiana says:

"As so construed, we think the statute is a violation of the fourteenth amendment of the federal Constitution, in that it deprives the defendants of their liberty without due process of law. The statute which forbids such act does not become due process of law, because it is inconsistent with the provisions of the Constitution of the Union. The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."

And when said statute endeavors to subject the common carrier and its agents to penalties in connection with the delivery of liquors to persons who may not be bona fide consignees, such carrier and such agents having no knowledge and no opportunity to obtain information of the unlawful intent of the consignee, it is void, because it not only interferes with and attempts to regulate interstate commerce, but it also deprives the carrier and its agents of their liberty and of their property without due process of law, and denies them the equal protection of the laws.

I am not unmindful of the elementary principal that an act of the Legislature must be presumed to fairly express the people's will, that every intendment should be made in its favor, and that its conflict with

constitutional provisions must clearly appear before the court is justified in declaring its invalidity, and still, nevertheless, I read in vain the statute referred to, in an effort to find some portion of it that can be saved from judicial condemnation, so far as it relates to common carriers lawfully engaged in the discharge of their duties.

The case is now before me on a motion for a preliminary injunction, in connection with which I have considered the verified bills, the affidavits filed by the complainants and the defendant relating thereto, and the argument of counsel.

I reach the conclusion that it is my duty to direct that the injunction prayed for, concerning both open and C. O. D. packages, do issue pendente lite, enjoining the United States Express Company from refusing to receive and transport such packages, when duly presented by complainants, under the usual rules pertaining to the receipt, forwarding, and delivery of packages of merchandise.