ST. LOUIS & S. F. R. CO. v. STATE.

No. 464. Opinion Filed May 10, 1910.

(109 Pac. 230.)

**INTOXICATING LIQUORS—Interstate Shipment — Control of State**

B., consigned, at Louisville, Ky., 124 cases of whisky to S., at Tulsa, Okla., and such interstate shipment having reached Tulsa on June 18, 1908, and being placed by the employees of the interstate carrier in a car used for storage purposes, the lower court found that such carrier, the plaintiff in error, was in possession of 97 cases of such whiskey on June 20th, at the time the same was seized by the officers representing the defendant in error. Held that, the lower court having found that same was in possession of the interstate carrier at the time of seizure, and there being evidence reasonably tending to sustain such finding, the state laws had not attached thereto.

(a) The lower court found that 10 other cases of said whisky, it not being shown who received from the carrier the other 17 cases, were in the possession of T. & O. on the premises of the interstate carrier on June 20, 1908, at which

time said 10 cases were seized by officers representing the defendant in error, but such finding not stating whether said 10 cases had been delivered by the carrier to T. & O. as the representatives of S., the consignee, nor in what capacity they held the possession of said whisky. Held that, in order to have the state laws attach to such interstate shipment, or any portion thereof, it must affirmatively appear in a legal way that such shipment, or such portion thereof as may be sought to be confiscated, had been delivered to the consignee or his agent by the interstate carrier or its agent.

(Syllabus by the Court.)

*Error from Tulsa County Court; N. J. Gubser, Judge.*

Proceedings by the state against the St. Louis & San Francisco Railroad Company for the forfeiture of intoxicating liquors. Judgment for the State, and defendant brings error. Reversed and remanded, with directions.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.—Citing: *Webb High v. State,* 2 Okla. Cr. 161; *Rhodes v. Iowa,* 170 U. S. 412; *Vance v. Vandercook Co.,* 170 U. S. 139; *Heymann v. Southern Ry. Co.,* 203 U. S. 270.

*Fred S. Caldwell,* for the State.—Citing *State v. Eighteen Casks of Beer,* 24 Okla. 786.

WILLIAMS, J. The judgment of this case recites "that on the 20th day of June, 1908, Lon Lewis, the sheriff of Tulsa county, Okla., took from the possession of said claimant, and from one of its storage cars, located on its depot grounds, 97 cases of 'Sunnybrook whisky,' and from Tom Taylor and Charles Overton 10 cases of 'Sunnybrook whisky,' and that said 10 cases had just been removed by said Taylor & Overton from said storage car; and the court further finds that all of said liquor was a part of a shipment arising at Louisville, Ky., and transported by said claimant (plaintiff in error) from St. Louis, Mo., to Tulsa, Okla. The court further finds that the possession of said liquor by said claimant and said Taylor & Overton was in violation of an act passed by the Legislative Assembly of the state of Oklahoma, approved March 24, A. D. 1908, being Senate Bill No. 61, entitled

'An act to establish a state agency and local agency for the sale of intoxicating liquors for certain purposes,' etc. It is therefore ordered, adjudged, and decreed by the court that said liquors be forfeited to the state of Oklahoma, and by the sheriff of Tulsa county delivered to the custody of the superintendent of said state agency."

In the case of *State v. 18 Casks of Beer*, 24 Okla. 786, 104 Pac. 1093, it was held:

"A citizen of Oklahoma having purchased intoxicating liquors in another state, and caused the same to be transported to him as consignee in this state by an interstate shipment, the laws of this state by virtue of the police power (Act Cong. Aug. 8, 1890, c. 728, 26 Stat. 313 [ U. S. Comp. St. 1901, p. 3177]) attach immediately after the consummation of the delivery by the carrier to the consignee. (a) Such consignee having received the actual and exclusive possession of such liquors from the carrier at its depot, and retaining such possession on its said premises with the purpose and the intention of selling and bartering the same contrary to the laws of this state, such liquors may be seized and confiscated under sections 5, 6, art. 3, of the enforcing act (Sess. Laws 1907-08, p. 605, c. 69), before the same have been by said consignee conveyed from the carrier's premises to the consignee's residence, place of business, or warehouse. (b)  *  *  *"

The plaintiff in error railway company, as an interstate carrier, had a right to retain the possession of such liquors for delivery to the consignee by virtue of such interstate shipment. *Heymann v. Southern Ry. Co.*, 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178; *Adams Express Co. v. Kentucky*, 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987. See, also, *State v. Intoxicating Liquors*, 102 Me. 385, 67 Atl. 312, 120 Am. St. Rep. 504; *Commonwealth v. People's Express Co.*, 201 Mass. 564, 88 N. E. 420.

In the case of *Adams Express Co. v. Kentucky, supra*, Mr. Justice Brewer, in speaking for the court, said:

"But that the agent consented to hold the whisky until Saturday did not destroy the character of the transaction as one of interstate commerce is settled by the recent case of *Heyman v. Southern R. Co.*, 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178. In that case, whisky had been forwarded to a party in Charleston,

S. C., and after its arrival at Charleston was placed in the warehouse of the railroad company by its agent, and there seized by constables, asserting their rights so to do under the dispensary law of South Carolina. The point was made, and sustained by the Supreme Court of the state of Georgia, in which state an action had been brought against the company for the value of the goods, that when the goods were placed in the warehouse the carrier was thenceforward liable only as a warehouseman. In passing upon this contention, we said: * * * 'As the general principle is that goods moving in interstate commerce cease to be such commerce only after delivery and sale in the original package, and as the settled rule is that the Wilson law was not an abdication of the power of Congress to regulate interstate commerce, since that law simply affects an incident of such commerce by allowing the state power to attach after delivery and before sale we, are not concerned with whether, under the law of any particular state, the liability of a railroad company as carrier ceases, and becomes that of a warehouseman on the goods reaching their ultimate destination, before notice and before the expiration of a reasonable time for the consignee to receive the goods from the carrier; for, whatever may be the divergent legal rules in the several states concerning the precise time when the liability of a carrier as such in respect to the carriage of goods ends, they cannot affect the general principle as to when an interstate shipment ceases to be under the protection of the commerce clause of the Constitution, and thereby comes under control of the state authority.' "

The court further said:

"With reference to the testimony as to the knowledge by the company of the fact that the whisky had not been ordered by the consignee, it is sufficient to say. that the averment in the indictment is that the express company was engaged in the business of a common carrier of packages, etc,. and that the shipment and delivery were made and done in the usual course of its business. This excludes necessarily the assumption that the transaction was one of sale by the express company at East Bernstadt, and, of course, the company was under no obligation to offer testimony in support of that which the state admitted to be the fact. We do not mean to intimate that an express company may not also be engaged in selling liquor in a state contrary to its law, or that the fact that the consignee did not order a shipment might not be evidence for a jury to consider upon the question whether the

company was not, in addition to its express business, also selling liquor contrary to the statutes. It is enough to hold, as we do, that under the averments of this indictment such testimony is immaterial. It is, of course, a question of fact whether a carrier is confining itself strictly to its business as a carrier or participating in illegal sales. The consignor alone may be trying to evade the statute. He may forward the liquors in the expectation that the consignee will, when informed of their arrival, take and pay for them. So the fact that there is no previous order by the consignee may not be conclusive of the carrier's wrongdoing, but still it is entitled to consideration in determining that question. Much as we may sympathize with the efforts to put a stop to the sales of intoxicating liquors in defiance of the policy of a state, we are not at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce."

The court having found that the claimant, the St. Louis & San Francisco Railroad Company, was in possession of the 97 cases of whisky taken from it on June 20, 1908, by the officers of the state, *which came to its possession at Tulsa, Okla., on June 18, 1908, under the interstate shipment initiated at Louisville, Ky.,* this finding is binding on this court. *McCann v. McCann,* 24 Okla. 264, 103 Pac. 694; *Seward v. Casler,* 24 Okla. 275, 103 Pac. 740. It necessarily follows, under such finding, that the 97 cases had not been delivered to the consignee or his agent, and that the state laws had not attached.

As to the 10 cases found to have been taken from the possession of Tom Taylor and Charles Overton, if the possession had passed from the carrier to said Taylor & Overton, the state laws then and there attached, and if they had such whisky in their possession for the purpose of sale, barter, etc., the lower court was justified in confiscating such 10 cases. Under the evidence in this record, the conclusion as to such 10 cases, that the possession had passed from the carrier to Taylor & Overton, and they had the same in their possession for such an unlawful purpose as would justify confiscation, may be sustained.

The counsel for defendant in error in his brief states:

"Mr. Breckinridge, county attorney of Tulsa county, independent of any assistance or co-operation on the part of claimant, or its agents and employees, caused an information to be filed against the parties, Taylor & Overton, charging them with feloniously breaking into and entering said storage car in the nighttime. They were in due time given a preliminary hearing, at which they offered no evidence on their behalf, and were bound over to await the action of the district court. The case thus pending in the district court was continued from term to term until last fall, when the county attorney forced it to trial. After the state had introduced its evidence and rested, the defendants, Taylor & Overton, offered as a witness on their behalf Mr. Hollis, the same person who Mr. Hissong, according to the record, testified in the case at bar was claimant's chief clerk. Mr. Hissong further testified that the said claimant's chief clerk, at about 7 o'clock in the morning, after the night upon which the storage car was broken into, came and told Hissong about it; and on their behalf the said Hollis, claimant's chief clerk, testified that he delivered said shipment of whisky, consisting of 124 cases covered by claimant's bill of lading, marked 'Exhibit B,' to the said Taylor & Overton, and took up from them at the time said original bill of lading, and that he, as claimant's chief clerk, authorized them to go to the storage car in the nighttime and take said shipment of whisky therefrom. Upon this testimony the said Taylor & Overton were acquitted."

Under this record, at least as to the 97 cases, this cause must be reversed. As to the 10 cases taken from Taylor & Overton, on the premises of the interstate carrier, the court having found that the same were taken from the possession of the said Taylor & Overton, but not having made any specific finding as to whether the same were delivered by the interstate carrier or its agent to the said Taylor & Overton as the representatives of the consignee, and the state laws not attaching until a delivery by the interstate carrier to the consignee or his agent, the state would not be entitled to have the same confiscated until it is shown that such delivery had taken place. Upon another hearing, the evidence of the chief clerk of the plaintiff in error appearing to be now available to show a delivery of possession by the agent of the plaintiff

in error to the consignee or his representative prior to the seizure of said 97 cases, as well as the 10 cases taken from Taylor & Overton, may be used.

The case is accordingly reversed and remanded, with directions to grant a new trial, and proceed in accordance with this opinion.

All the Justices concur.