## GULF, C. & S. F. RY. CO. *et al.* v. STATE *ex rel.*

### No. 2092. Opinion Filed May 9, 1911.

**COMMERCE—Interstate Commerce—Intoxicating Liquors—Injunction.**
It is not within the power of the state courts to enjoin interstate carriers from receiving at points without the state for transportation to and delivery to consignees at points within the state, shipments of spirituous, vinous, fermented, and malt liquors and imitations thereof, "to persons who they well know, immediately upon receiving possession thereof, intended to use said liquors in violation of the laws of the state," including certain persons therein alleged to have paid the "special tax required by the United States of liquor dealers," or "to any other person after said defendant handling the shipment has been reliably informed from credible source, either by circumstances or otherwise, that such person is a person who does not· intend said shipment of liquor for his personal or family use, but in violation of the law .

of the state," said shipments being articles of interstate commerce.

(Syllabus by the Court.)

*Error from Superior Court, Oklahoma County; A. N. Munden, Judge.*

Injunction by the State upon relation of Fred S. Caldwell, against the Gulf, Colorado & Santa Fe Railway Company and others. From the judgment, defendants bring error. Reversed.

*Cottingham & Bledsoe, R. A. Klienschmidt, C. O. Blake, C. L. Jackson, Edgar A. De Meules, C. E. Warner,* and *Edward R. Jones,* for plaintiffs in error.

*Fred S. Caldwell,* for defendant in error.

WILLIAMS, J.   On the 14th day of September, A. D. 1910, the defendant in error as plaintiff, by Fred S. Caldwell as counsel to the Governor, against the plaintiffs in error as defendants, commenced in the Superior Court of Oklahoma county an action to restrain them as interstate carriers from receiving, at points without the state, shipments of spirituous, vinous, fermented, and malt liquors, and imitations thereof, for transportation to and delivery at points in this state, "to persons who they well know, immediately upon receiving possession thereof, intended to use said liquors in violation of the laws of the state," including certain persons therein alleged to have paid the "special tax required by the United States of liquor dealers," or "to any other person after said defendant handling the shipment has been reliably informed from credible source, either by circumstances or otherwise, that such other person is a person who does not intend said shipment of liquor for his personal or family use; but, on the contrary, intends to use and dispose of same in violation of the laws of the state of Oklahoma."

That Fred S. Caldwell, as counsel to the Governor, was authorized to bring this suit in the name of the state has been settled by the Criminal Court of Appeals, and such holding has been followed by this court. Counsel for the defendant in error in his brief says:

"If such liquor shipments are the subject of legitimate commerce between the states, then certainly they cannot be enjoined. It would be an insult to the intelligence of this honorable court to argue that a legitimate commerce transaction, or any lawful and proper act of the interstate carrier to be done and performed in connection therewith could be enjoined by a state court or any other court."

From this concession it naturally follows that if intoxicating liquors are the "subject of legitimate commerce between the states," this cause should be reversed and the temporary injunction dissolved.

In *Commonwealth v. People's Express Co.*, 201 Mass. 564, it is said:

"The Wilson Act, as interpreted by the Supreme Court of the United States, insures delivery to the consignee of intoxicating liquor, which is transported as interstate commerce free from and regardless of all prohibitive statutes of the several states. As pointed out above, such delivery may be at the residence or place of business of the consignee as well as at some common depot of consignment. The liquor is safe from state laws, until it passes into the actual or constructive possession of the consignee. *Rhodes v. Iowa*, 170 U. S. 412; *Vance v. Vandercook Co.* (No. 1) 170 U. S. 438; *American Express Co. v. Iowa*, 196 U. S. 133; *Pabst Brewing Co. v. Crenshaw*, 198 U. S. 17; *Foppiano v. Speed*, 199 U. S. 501; *Heyman v. Southern Railway Co.*, 213 U. S. 207; *Adams Express Co. v. Kentucky*, 206 U. S. 129. If the statute was construed as applying to interstate commerce, it would constitute a restriction upon its freedom and therefore would be beyond its power."

See, also, to the same effect *State v. Eighteen Casks of Beer et al.*, 24 Okla. 786, 104 Pac. 1093, 25 L. R. A. (N. S.) 492; *St. Louis & S. F. R. Co. v. State*, 26 Okla. 300, 109 Pac. 230; *In re Lebolt*, 77 Fed. (C. C.) 587; *Ex parte Jervey*, 66 Fed. (C. C.) 957; *In re Langford*, 57 Fed. (C. C.) 570.

In *Adams Express Co. v. Kentucky*, 214 U. S. 218, a state statute (Ky. Stat. 1908, sec. 1307) providing for a punishment of any party knowingly furnishing intoxicating liquor to an inebriate, as applied to the transportation of liquor by an express

company from state to state, being under consideration, the court said:

"Liquor, however obnoxious and hurtful it may be in the judgment of many, is a recognized article of commerce. *License Cases,* 5 How. 504, 577, 12 L. Ed. 256, 289; *Leisy v. Hardin,* 135 U. S. 100, 110, 34 L. Ed. 188, 132, 3 Inters. Com. Rep. 36, 10 Sup. Ct. Rep. 681. In *Vance v. W. A. Vandercook Co.,* 170 U. S. 438, 444, 42 L. Ed. 1100, 1103, 18 Sup. Ct. Rep. 674, 676, Mr. Justice White, delivering the opinion of the court, said: 'Equally well established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and, hence, that a state law which denies such a right or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States.' That the transportation is not complete until delivery to the consignee is also settled. In *Rhodes v. Iowa,* 170 U. S. 412, 426, 42 L. Ed. 1088, 1096, 18 Sup. Ct. Rep. 664, 669, it was held that the Wilson act (26 Stat. at L. 313, chap. 728, U. S. Comp. Stat. 1901, p. 3177) 'was not intended to and did not cause the power of the state to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination, and delivery there to the consignee.' This legislation is in the exercise of the police power,—a power which, generally speaking, belongs to the state,—and is an attempt, in virtue of that power, to directly regulate commerce; but, in case of conflict between the powers claimed by the state and those which belong exclusively to Congress, the former must yield, for the Constitution of the United States and the laws made in pursuance thereof are 'the supreme law of the land.' Section 5258 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 3564) provides: 'Every railroad company in the United States * * * is hereby authorized to carry upon and over its road * * * all passengers * * * freight, and property on their way from any state to another state, and to receive compensation therefor.' *New Orleans Gaslight Co. v. Louisiana Light & H. P. Mfg. Co.,* 115 U. S. 650, 29 L. Ed. 516, 6 Sup. Ct. Rep. 252; *Wabash, St. L. & P. R. Co. v. Illinois,* 118 U. S. 557, 30 L. Ed. 244, 1 Inters. Com. Rep. 31, 7 Sup. Ct. Rep. 4. In *Atlantic Coast Line R. Co. v. Wharton,* 207 U. S. 328, 334, 52 L. Ed. 230, 234, 28 Sup. Ct. Rep. 121, 123, it was declared 'that any exercise of state authority,

in whatever form manifested, which directly regulates interstate commerce, is repugnant to the commerce clause of the Constitution.' In *Adams Express Co. v. Kentucky,* 206 U. S. 129, 135, 51 L. Ed. 987, 991, 27 Sup. Ct. Rep. 606, 607, it was said: 'The testimony showed that the package, containing a gallon of whisky, was shipped from Cincinnati, Ohio, to George Meece, at East Bernstadt, Kentucky. The transaction was therefore one of interstate commerce, and within the exclusive jurisdiction of Congress. The Kentucky statute is obviously an attempt to regulate such interstate commerce. This is hardly questioned by the court of appeals, and is beyond dispute under the decisions of this court.' Clearly, within the cases above cited, the statute before us, as applied to transportation from state to state, cannot be sustained."

That intoxicating liquors, when consigned to points where their sale is prohibited by state laws, are the subject of interstate commerce is also settled by the following authorities: *State v. Intoxicating Liquors,* 102 Me. 385, 67 Atl. 312; *Rhodes v. Iowa,* 170 U. S. 412.

In *Louisville & N. R. Co. v. F. W. Cook Brewing Co.,* 172 Fed. 117, 96 C. C. A. 322, the United States Court of Appeals for the Seventh Circuit held that a state statute prohibiting carriers from carrying intoxicating liquors into any county or district wherein the sale of such liquors is prohibited by state law, as applied to shipments from other states, is void as an attempted regulation of interstate commerce, and affords no justification for the refusal of a railroad company, although a corporation of such state, to receive and carry such shipments. In *United States ex rel. Friedman et al. v. United States Express Co.,* 180 Fed. (D. C.) 1006, it was also held that where an express company doing interstate business refused shipments of intoxicating liquors offered by relators in Arkansas for transportation to purchasers in that portion of Oklahoma formerly called the Indian Territory, relators were entitled under such section to invoke the aid of mandamus to compel the express company to receive, transport, and deliver such liquor as an article of commerce not prohibited by federal law from being introduced into that part of Oklahoma to which it was consigned. See, also, *Crescent Liquor Co. et al.*

v. *Platt,* 148 Fed. 894; *Davis Hotel Co. v. Platt,* 172 Fed. (C. C.) 775; *Danciger et al. v. Wells Fargo Express Co.,* 154 Fed. (D. C.) 379; *Cin., N. O. & T. P. R. Co. v. Com.,* 126 Ky. 563, 104 S. W. 394; *State v. Kenney,* 62 W. Va. 284, 57 S. E. 823. Section 239 of the Fed. Penal Code, *supra,* passed by Congress in the exercise of an expressly delegated power, is a recognition, without any exception, of intoxicating liquors as a subject or article of interstate commerce. (*Com. v. People's Express Co., supra.*) What is legitimate commerce between the states does not depend upon state policy. The framers of the federal Constitution in section 9, art. 1, expressly delegated this power to the federal government. The attempt is now made to do that through the agency of the state judiciary which counsel for defendant in error concedes could not be accomplished by state legislation. If the state judiciary possesses this distinct power an anomaly is presented in the relation of the several states to the Union.

If the state courts, exercising the powers of chancery, are empowered to determine what is legitimate interstate commerce so as to prevent an interstate carrier from receiving an article in another state that is recognized, not only by the laws of that state, but also by those of the federal Congress, as being an article of commerce, and transporting the same into this state and delivering it to the consignee, on the ground that under the laws of this state it is unlawful to manufacture or sell same within the state, then it is within the power of the state to destroy commerce beween the states. That is just what the framers of the federal Constitution intended they should not be permitted to do. In the days of the Confederation the conflicting authority between the different colonies as to commerce on the navigable rivers and canals lying between the different colonies caused complications. This brought about a realization of the necessity of lodging the power "to regulate commerce to foreign nations and among the several states and with the Indian tribes" with federal government.

The argument of counsel for the defendant in error is based

on an erroneous application of his premise. Let it be conceded that a contract made by a citizen of the state of Oklahoma with a licensed liquor dealer in Kansas City, Mo., for the purchase of intoxicating liquors to be there delivered to the interstate carrier for the vendee and to be transported by such carrier to a point in Oklahoma, and there delivered by it to said vendee, who intends vending it contrary to the laws of said state, the Kansas City liquor dealer, from the beginning, knowing of such unlawful purpose on the part of the vendee, may not be enforced in the courts of this state on the grounds of public policy. Yet it does not follow that said liquors are not the subject or articles of interstate commerce. On delivery to the interstate carrier for the vendee by the vendor the sale was consummated, and such liquors then and there became the property of the vendee, subject to any lien that the carrier might have thereon for transportation charges. In that state the sale was lawful, and without a dissenting authority under such a state of facts intoxicating liquors are property. *License Cases,* 5 Howard, 504, 12 L. Ed. 256; *Eidge v. City of Bessemer,* 164 Ala. 599, 51 South. 246; *Preston v. Drew,* 33 Me. 558, 54 Am. Dec. 639; *Wynehamer v. People,* (3 Kern) 13 N. W. 384; *State v. Williams,* 136 N. C. 618, 61 S. E. 61, 17 L. R. A. (N. S.) 299; *Lincoln v. Smith,* 27 Vt. 328; *State v. Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847. See, also, *Comw. v. Campbell,* 133 Ky. 50, 19 Am. & Eng. Ann. Cas. 159.

True, laws enacted under the exercise of the police power for the public welfare may, in a sense, impair property rights in intoxicating liquors by way of preventing the sale thereof, or the storing of the same at designated places or holding the same for sale, or any other unlawful purpose, making such acts a nuisance, misdemeanor or felony, and subject to criminal punishment. But such state laws do not attach until the delivery of the same to the consignee within the state by the interstate carrier. It cannot be successfully maintained that such laws attach to the liquor without the state, and have an extraterritorial effect so as to make it unlawful for the interstate carrier to receive such shipment in

another state for delivery in this state. No authority has been cited to that effect and none can be found. The opposite in law is a truism. And even the knowledge of the interstate carrier that after the delivery thereof it will be used contrary to the state law, if the carrier making such delivery acts reasonably within the scope of its duty as a carrier, does not change the rule. *Adams Express Co. v. Kentucky,* 214 U. S. 218, *supra.*

Let it be supposed that it is against the law of this state for hardware merchants to sell pistols within the state. A hardware merchant buys a lot of pistols in Pittsburg, Pennsylvania, from the manufacturer with a view of having the same transported by an interstate carrier to a point in Oklahoma for delivery to himself, where he intends vending the same contrary to the state statute, and that the manufacturer, or the vendor, has knowledge of such intention. Can it be maintained that the state of Oklahoma can enjoin such interstate carrier from receiving such lot of pistols without the state and delivering such interstate shipment to the vendee in Oklahoma? The vendee has a property right in the intoxicating liquors, just as he has in the pistols. While the state, under the exercise of the police power for the benefit of the public, may impair such property right in the pistols and intoxicating liquors to the extent of regulating or prohibiting the sale, yet when it comes to a complete taking of such property right, such can be done only by due process of law, which guarantees the owner of the property his day in court. If the vendee, under the laws of Oklahoma, has forfeited his right of ownership of such intoxicating liquors, such forfeiture must be determined in a judicial way by due process of law by giving him reasonable notice and a hearing and finding and adjudication being had thereon. That can only be done after the state laws have attached. It is inconceivable that, because the contract for the sale of the liquor in such case will not be enforced in the courts of this state on the grounds of public policy, said liquors lose all character of property. Vessels engaged in smuggling contrary to law are subject to confiscation, but that does not the less render

them property. On account of the violation of the law, such law operates against the *rem*, and by proper procedure the title is divested from the owner and invested in the government for the benefit of the public when it may be destroyed. So it is with any vessel, goods, wares, or merchandise seized by the United States officers of customs and prosecuted for forfeiture by virtue of any law respecting the revenue, or the registering and recording or the enrolling and licensing of vessels. 3 Fed. Stat. Ann., sec. 923, p. 96. Likewise it is with vehicles, horses, and teams used by vendors in the unlawful introduction and sale of whisky on Indian reservations. Not only the intoxicating liquors, but also such vehicles and teams, are subject to forfeiture and confiscation. But in all such instances reasonable notice and a hearing is contemplated so as to meet the requirements of due process of law. In such cases the law operates against and fastens upon the *rem* and by due process divests the title from the owner and invests it for the benefit of the public.

It being conceded by the counsel for the defendant in error that under section 8 of article 1 of the federal Constitution the Legislature of the state is without power to enact a law so as to prevent an interstate carrier from receiving a shipment of intoxicating liquors without the state and transporting it to a point within the state and delivering the same to the consignee, what is the difference in such legislative powers and the co-ordinate judicial powers? The Legislature acts *in futuro*, declaring the rule of law. The judiciary, on what exists, beginning after the exercise of legislative power has been completed. It having determined what the statute means and applied the facts to it renders a decree thereon. The judiciary can enact no law, but having made a determination as to what the law is which comes to us in this state by enactment (for the Constitution is an enacted organic law, the statute an enacted legislative measure, and the common law transplanted by legislative enactment), enters a decree thereon. The law is the master of the courts, which act under its terms. They are powerless to prevent the receiving

of a shipment of intoxicating liquors by a carrier at a point in another state and transporting the same to a point in this state and there to be delivered, unless some valid law exists forbidding such act on the part of such carrier. It being conceded that the Legislature cannot enact such a law, it would be an act of usurpation on the part of the judiciary to attempt to exercise a power which clearly it does not possess. That intoxicating liquors are the subject of interstate commerce having been so decided repeatedly by the Supreme Court of the United States, we are bound thereby. Article 6 of the federal Constitution. Said court determines the meaning of the acts of Congress and of the federal Constitution, and when it is necessary for the same to be applied by the state courts they must follow such construction. The state courts upon purely state matters determine the meaning of the state Constitutions and statutes, and likewise the federal courts in applying the same as a rule follow the state construction. *Lindsey v. Natural Carbonic Gas Co.*, 220 U. S. 61, 31 Sup. Ct. 337. This was the intention of the fathers that builded this republic. By this means the harmony between delegated federal and reserved state powers is preserved. Neither should the former encroach upon the latter because they are weak, nor the latter upon the former because a temporary advantage may flow therefrom. When the legal path as to federal questions has already been blazed, there is nothing for state courts to do but as faithfully as possible to follow therein.

The judgment of the lower court is reversed and remanded, with instructions to dismiss the petition.

All the Justices concur.